# UNITED STATES DISTRICT COURT
# IN THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

TONYA BOWLES, for herself and all
those similarly situated,

       Plaintiff,

v.

COUNTY OF WAYNE by its BOARD
OF COMMISSIONERS also
sometimes known as CHARTER
COUNTY OF WAYNE by its BOARD
OF COMMISSIONERS

and

ERIC R. SABREE, in his official and
personal capacity,

       Defendants.

Case No.  20-12838

Honorable Linda V. Parker

Magistrate Judge Kimberly G. Altman

---

## DEFENDANTS' MOTION TO DISMISS
_____

Defendants move this Court for an Order dismissing Plaintiff's claims with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).

In accordance with LR 7.1(d), on December 1, 2020, Defendants' counsel contacted Plaintiff's counsel to explain the nature of this Motion and its legal basis, and to request concurrence in the relief sought.  Plaintiff's counsel did not concur.

DYKEMA GOSSETT• A PROFESSIONAL LIMITED LIABILITY COMPANY• 400 RENAISSANCE CENTER• DETROIT, MICHIGAN 48243

WHEREFORE, Defendants request that this Court grant their Motion and enter an Order dismissing Plaintiff's Complaint with prejudice.

Respectfully submitted,

**DYKEMA GOSSETT PLLC**

By: /s/ Theodore W. Seitz
 Theodore W. Seitz (P60320)
 Nasseem S. Ramin (P73513)
 Samantha L. Walls (P75727)
 *Attorneys for Defendants*
 400 Renaissance Center, 37th Floor
 Detroit, MI 48243
 (313) 568-6800
 tseitz@dykema.com
 nramin@dykema.com
 swalls@dykema.com

Dated:  December 3, 2020

2

# UNITED STATES DISTRICT COURT
# IN THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

TONYA BOWLES, for herself and all
those similarly situated,

      Plaintiff,

v.

COUNTY OF WAYNE by its BOARD
OF COMMISSIONERS also
sometimes known as CHARTER
COUNTY OF WAYNE by its BOARD
OF COMMISSIONERS

and

ERIC R. SABREE, in his official and
personal capacity,

      Defendants.

Case No.  20-12838

Honorable Linda V. Parker

Magistrate Judge Kimberly G. Altman

---

# BRIEF IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS

---

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES PRESENTED.............................................................V

MOST CONTROLLING AUTHORITY ................................................. VI

INTRODUCTION ..............................................................................................1

BACKGROUND ..............................................................................................3

STANDARD OF DECISION ............................................................................6

I.   PLAINTIFF LACKS STANDING TO BRING ANY CLAIMS RELATING TO ALLEGED SURPLUS PROCEEDS BECAUSE SHE DEEDED THE PROPERTY TO A NON-PARTY. .....................................7

II.  THIS COURT LACKS JURISDICTION BECAUSE THERE IS AN ADEQUATE STATE COURT REMEDY. ..................................................9

III. DEFENDANTS ARE ENTITLED TO SOVEREIGN IMMUNITY. ..........10

IV.  THE CLAIMS AGAINST TREASURER SABREE SHOULD BE DISMISSED. ..........................................................................................13

V.   THE CLAIMS OF ALLEGED VIOLATIONS OF THE U.S. CONSTITUTION SHOULD BE DISMISSED. ..........................................15

VI.  *RAFAELI* IS PROSPECTIVE ONLY AND BARS THESE CLAIMS. .......16

VII. THE STATUTE OF LIMITATIONS BARS PLAINTIFF'S CLAIMS. ......24

CONCLUSION .................................................................................................255

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. BioCare Inc. v. Howard & Howard Attys, PLLC*,
  702 F. App'x 416 (6th Cir. 2017) ......................................................................6

*Am. Trucking Ass'n v. Smith*,
  496 U.S. 167 (1990) ..........................................................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................7

*Bolt v. City of Lansing*,
  238 Mich. App. 37 (1999) ............................................................................18, 19

*Bott v. Comm'n. of Nat. Res.*,
  415 Mich. 45 (1982) ..........................................................................................19

*Brotherton v. Cleveland*,
  173 F.3d 552 (6th Cir. 1999) .............................................................................11

*Cady v. Arenac Cty.*,
  574 F.3d 334 (6th Cir. 2009) .............................................................................10

*Citizens in Charge, Inc. v. Husted*,
  810 F.3d 437 (6th Cir. 2016) ........................................................................13, 14

*Cleveland Branch, NAACP v. City of Parma*,
  263 F.3d 513 (6th Cir. 2001) ...............................................................................8

*DLX, Inc. v. Kentucky*,
  381 F.3d 511 (6th Cir. 2004) ...............................................................................7

*Doe v. Claiborne Cty.*,
  103 F.3d 495 (6th Cir. 1996) .............................................................................14

*Freed v. Thomas*,
  976 F.3d 729 (6th Cir. 2020) .............................................................................16

*Freed v. Thomas*,
  2018 U.S. Dist. LEXIS 190424 (E.D. Mich. Nov. 7, 2018)..................10, 12, 16

DYKEMA GOSSETT• A PROFESSIONAL LIMITED LIABILITY COMPANY• 400 RENAISSANCE CENTER• DETROIT, MICHIGAN 48243

i

*Grosse Pointe Law Firm v. Jaguar*,
317 Mich. App. 395 (2016) ...................................................................25

*Guerrero v. Dept of Corr.*,
165 Mich. App. 192 (1987) ...................................................................23

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982)...............................................................................13

*Hart v. Detroit*,
416 Mich. 488 (1982) ............................................................................24

*Hawthorne-Burdine v. Oakland Univ.*,
158 F. Supp. 3d 586 (E.D. Mich. 2016) ...............................................14

*Hedgepeth v. Tennessee*,
215 F.3d 608 (6th Cir. 2000) ................................................................10

*Herweyer v. Clark Highway Servs.*,
455 Mich. 14 (1997) ..............................................................................25

*Jahner v. Dept. of Corr.*,
197 Mich. App. 111 (1992) ..............................................................20, 22

*James A Welch Co, Inc. v. State Land Office Bd.*,
295 Mich. 85 (1940) ..............................................................................19

*Kentucky v. Graham*,
473 U.S. 159 (1985)...............................................................................10

*Knick v. Scott Twp*,
139 S. Ct. 2162 (2019).............................................................................9

*Krench v. Michigan*,
277 Mich. 168 (1936) ............................................................................19

*Ladd v. Marchbanks*,
971 F.3d 574 (6th Cir. 2020) ................................................................12

*Lindsey v. Harper Hosp.*,
455 Mich. 56 (1997) .........................................................................16, 18

*Lucas v. Wayne Cty. Election Com.*,
146 Mich. App. 742 (1985) ..................................................................................4

*Martin v. Dept. of Corrections*,
424 Mich. 553 (1986) ..................................................................................23, 24

*Martinez v. Dep't of Homeland Security*,
502 F. Supp. 2d 631 (E.D. Mich. 2007) ..............................................................6

*McNeil v. Cmty. Prob. Servs., LLC*,
945 F.3d 991 (6th Cir. 2019) ............................................................................12

*Meltzer v. State Land Office Bd.*,
301 Mich. 541 (1942) ........................................................................................19

*Monell v. New York City Dep't. of Soc. Servs.*,
436 U.S. 658 (1978).........................................................................................14

*MX Grp., Inc. v. City of Covington*,
293 F.3d 326 (6th Cir. 2002) ..............................................................................7

*New Eng. Health Care Employees Pension Fund v. Ernst & Young,*
*LLP*, 336 F.3d 495 (6th Cir. 2003) ....................................................................3

*Placek v. City of Sterling Hts.*,
405 Mich. 638 (1979) ........................................................................................20

*Pohutski v. City of Allen Park*,
465 Mich. 675 (2002) .................................................................................. 20-23

*Rafaeli, LLC v Oakland Cty*,
2020 Mich. LEXIS 1219 (2020)................................................................passim

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016).........................................................................................8

*Tebo v. Havlik*,
418 Mich. 350 (1984) ........................................................................................21

*U.S. v. $515,060.42 in U.S. Currency*,
152 F.3d 491 (6th Cir. 1998) ..............................................................................8

DYKEMA GOSSETT• A PROFESSIONAL LIMITED LIABILITY COMPANY• 400 RENAISSANCE CENTER• DETROIT, MICHIGAN 48243

iii

*Wayside Church v. Van Buren County*,
    847 F.3d 812 (6th Cir. 2017) ..............................................................9, 10, 12, 16

*Will v Mich. Dep't of State Police*,
    491 U.S. 58 (1989)...........................................................................................14

*Williams v. Detroit*,
    364 Mich. 231 (1961) .......................................................................................17

*Williamson Cty. v. Hamilton Bank*,
    473 U.S. 172 (1985)...........................................................................................9

**RULES**

Rule 12(b)(1)....................................................................................................6, 26

Rule 12(b)(6)....................................................................................................7, 26

**STATUTES**

42 U.S.C. § 1983..................................................................................................15

Charter Counties Act, MCL 45.501 *et seq.*.............................................................4

Michigan General Property Tax Act, MCL 211.1 *et seq.*.................................passim

Tax Injunction Act, 28 U.S.C. § 1341 ..........................................................2, 9, 10

DYKEMA GOSSETT• A PROFESSIONAL LIMITED LIABILITY COMPANY• 400 RENAISSANCE CENTER• DETROIT, MICHIGAN 48243

## STATEMENT OF ISSUES PRESENTED

1. Ms. Bowles lacks standing to bring this claim for a refund of auction sale proceeds that exceed her unpaid taxes, because she deeded her interest in the subject property to another before the subject property was sold at tax foreclosure auction.

2. This Court lacks jurisdiction because there is an adequate state court remedy.

3. The defendants are entitled to sovereign immunity and therefore all claims against them must be dismissed.

4. Treasurer Sabree, a defendant in his official and personal (or individual) capacity, is entitled to qualified immunity, and all claims against him must be dismissed.

5. The federal constitutional claims fail as a matter of law.

6   The *Rafaeli* decision, which significantly changed Michigan law without warning, should be applied only prospectively, and thus plaintiffs' claims are barred.

7. The claims are barred by the most closely analogous statute of limitations.

8. The Board of Commissioners of Wayne County is not a proper defendant because Wayne County is a charter county, and its Board of Commissioners is separate from the chief executive that operates the County.

## MOST CONTROLLING AUTHORITY

Generally:  The Michigan General Property Tax Act, MCL 211.1 *et seq*.

1.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).

    *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513 (6th Cir. 2001).

    *U.S. v. $515,060.42 in U.S. Currency*, 152 F.3d 491 (6th Cir. 1998).

2.  28 U.S.C. § 1341 (the Tax Injunction Act).

    *Wayside Church v. Van Buren County*, 847 F.3d 812 (6th Cir. 2017).

    *Hedgepeth v. Tennessee,* 215 F.3d 608 (6th Cir. 2000).

3.  *Cady v. Arenac Cty.*, 574 F.3d 334 (6th Cir. 2009).

    *Brotherton v. Cleveland*, 173 F.3d 552 (6th Cir. 1999).

    *Ladd v. Marchbanks*, 971 F.3d 574 (6th Cir. 2020).

    MCL 211.78m(8).

4.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989).

    *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437 (6th Cir. 2016).

    *Doe v. Claiborne Cty.*, 103 F.3d 495 (6th Cir. 1996).

    *Hawthorne-Burdine v. Oakland Univ.*, 158 F. Supp. 3d 586 (E.D. Mich.
         2016).

5.  *Rafaeli, LLC v Oakland Cty*, 2020 Mich LEXIS 1219 (2020).

6.  *American Trucking Ass'n v. Smith*, 496 U.S. 167 (1990).

    *Pohutski v. City of Allen Park,* 465 Mich. 675 (2002).

    *Lindsey v. Harper Hosp.,* 455 Mich. 56 (1997).

*Tebo v. Havlik*, 418 Mich. 350 (1984).

*Bott v. Comm'n. of Nat. Res.*, 415 Mich. 45 (1982).

*Placek v. City of Sterling Heights*, 405 Mich. 638 (1979).

*Bolt v. City of Lansing*, 238 Mich. App. 37 (1999).

*Jahner v. Dept. of Corr.*, 197 Mich. App. 111 (1992).

*Guerrero v. Dept of Corr.*, 165 Mich. App. 192 (1987).

MCL 211.78m.

7.   *Herweyer v. Clark Highway Servs.*, 455 Mich. 14 (1997).

*Grosse Pointe Law Firm v. Jaguar*, 317 Mich. App. 395 (2016).

MCL 211.78*l*.

8.   *Lucas v. Wayne Cty. Election Com.*, 146 Mich. App. 742 (1985).

MCL 45.501, *et seq.,* the Charter Counties Act.

# INTRODUCTION

After Plaintiff failed to pay her property taxes, the Office of the Wayne County Treasurer foreclosed on her property in compliance with the Michigan General Property Tax Act ("GPTA" or the "Tax Act"), MCL 211.1 *et seq*. The foreclosure was completed in 2017. Now, years later, Plaintiff alleges that the retention of "surplus proceeds" (the amount by which the foreclosed property auction sale price exceeded the delinquent taxes, costs, interest, and fees reasonably related to the foreclosure) violated the Michigan and United States Constitutions under their respective Takings Clauses. But Plaintiff fails to tell the Court that she quitclaimed whatever interest she had in the subject property – and in any alleged "surplus" – to a third party before the property was sold at foreclosure auction.

The Michigan Supreme Court recently held that the Michigan Takings Clause requires the foreclosing governmental unit to return "surplus proceeds" realized from tax foreclosure sale of property to those with pre-foreclosure ownership interests in the property. *See Rafaeli, LLC v. Oakland Cty*, 2020 Mich. LEXIS 1219 (July 17, 2020) (attached as **Ex. 1**). Plaintiff, who seeks federal relief expressly rejected by *Rafaeli*, does not allege that the Office of the County Treasurer failed to comply with the Tax Act. Instead, her claims hinge on the assertion that when the Office of County Treasurer complied with the Tax Act – selling the property and keeping the proceeds from the sale (rather than retaining only the amount of the tax

1

delinquency) – the County violated the United States and Michigan Constitutions' Takings Clauses. Plaintiff turns the Michigan Supreme Court's *Rafaeli* holding on its head by asking this Court to ignore that she deeded away her interest in the property and any claim to a "surplus." Each of Plaintiff's claims are subject to dismissal for this and several additional reasons:

*First,* Plaintiff lacks standing to pursue claims related to "surplus proceeds" because she deeded her interest in the property to a non-party. *Second*, this Court lacks jurisdiction under the Tax Injunction Act and principles of comity because Plaintiff has an adequate remedy in state court.

*Third*, under the Eleventh Amendment, Wayne County and Treasurer Sabree cannot be sued for acting in accordance with the GPTA's mandate that provided no discretion for distributing "surplus proceeds." Moreover, the claims against Sabree should also be dismissed because (1) he is entitled to qualified immunity for any individual capacity claims, and (2) the official capacity claims are duplicative of the claims raised against the County itself.

*Fourth,* *Rafaeli* rejects claims that the retention of surplus proceeds violates the United States Constitution. *Fifth*, Plaintiff's assumption that *Rafaeli* can be applied retroactively is ill-conceived. *Rafaeli* is silent on whether its holding regarding return of "surplus proceeds" was meant to be prospective or retroactive. This points to prospective application. And *Rafaeli* includes a section encouraging

2

the Michigan Legislature to amend the Tax Act, to create a process for those with pre-foreclosure ownership interests in property to have their "surplus proceeds" claims resolved, further supporting a prospective application. *Sixth*, the claims are barred by the most analogous statute of limitations.

## BACKGROUND

This case is one of many brought in state and federal courts, challenging tax foreclosures conducted by Michigan counties in accordance with the Tax Act.[1]

*Plaintiff and the Tax-Foreclosed Property*. Plaintiff failed to pay outstanding property taxes on 14730 East State Fair, Detroit, MI (the "Property") and, as a result, Wayne County initiated foreclosure proceedings. The Wayne County Circuit Court entered a judgment of foreclosure in the County's favor on March 29, 2017. (Ex. 2).[2]

---

[1] Under the Tax Act, on March 1 of each calendar year, all unpaid real property taxes from the prior calendar year are "returned delinquent" to the county treasurer for collection, and the county treasurer's tax-collection procedures begin. MCL 211.78 *et seq*. Multiple notices—both of delinquency and of potential foreclosure—must be provided to the parcel owner. *Id*. § 211.78f. And if, after these notices, the parcel owner still fails to pay the back taxes owed, the property is relinquished subject to foreclosure and the right of redemption. *Id*. § 211.78g(1). If the county chooses foreclosure, the treasurer must file a petition for foreclosure in a Michigan trial court. *Id*. § 211.78 (h). Following a hearing and additional process, the court will award the county fee simple title to the property if it is not redeemed by a certain date. *Id*. § 211.78k(6).

[2] This Court may consider documents in the chain of title "because they are 'public records or are otherwise appropriate for the taking of judicial notice.'" *New Eng. Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

DYKEMA GOSSETT• A PROFESSIONAL LIMITED LIABILITY COMPANY• 400 RENAISSANCE CENTER• DETROIT, MICHIGAN 48243

3

On June 9, 2017, Plaintiff deeded her interest in the Property to non-party Joshua Bowles. (Ex. 3). On November 16, 2017, Wayne County sold the Property at auction to a private purchaser for $14,000. (Compl. ¶ 18).

*__Plaintiff's Complaint__*. In October 2020, more than three years after the tax foreclosure, Plaintiff filed a four-count complaint alleging inverse condemnation and governmental taking without just compensation in violation of the Michigan and United States Constitutions. Plaintiff asserts that Defendants[3] "have illegally seized property in the form of excess/surplus equity from private individuals and entities without any compensation at all." (Compl. ¶ 1). Plaintiff alleges that Defendants have subjected others to "taking and/or unconstitutional forfeiture," and seeks to have this case proceed as a class action. *Id.* ¶ 34.

*__Rafaeli, LLC v Oakland County__*. This action is guided by the Michigan Supreme Court's recent decision in *Rafaeli*. (Ex 1). The *Rafaeli* plaintiffs were former

---

[3] Plaintiff names as a Defendant "the County of Wayne," "by its Board of Commissioners," and alleges in her Complaint that the County "is controlled or operated by its duly designated Board of Commissioners." (Compl. ¶ 5). Plaintiff is wrong. The County is a Charter County, meaning there is a separation of power between the County and its Board of Commissioners. *See, e.g.,* The Charter Counties Act, MCL 45.501 *et seq. See also Lucas v. Wayne Cty. Election Com.*, 146 Mich. App. 742, 744 (1985) ("Wayne County adopted a home-rule charter which took effect on January 1, 1983, establishing a county government with a chief executive officer in accordance with the charter counties act.") Thus, because the Board of Commissioners does not operate or control the County, **Defendants also request dismissal of the Board of Commissioners to the extent that Plaintiff has attempted to name it as a Defendant**.

DYKEMA GOSSETT● A PROFESSIONAL LIMITED LIABILITY COMPANY● 400 RENAISSANCE CENTER● DETROIT, MICHIGAN 48243

commercial property owners who brought an action against Oakland County and its treasurer to recover surplus funds from the sale of their properties following foreclosure of tax liens, entry of judgments of possession in Oakland County's favor, and the subsequent sale of the foreclosed properties to third-party purchasers. *Id*. The *Rafaeli* plaintiffs argued that Oakland County's retention of the surplus sale funds was a violation of the due process and equal protection clauses of the Michigan and United States Constitutions, as well as an unconstitutional taking. *Id*. at *5. The Oakland County Circuit entered judgment in defendants' favor, finding that the plaintiffs' interests in the properties were extinguished by the tax sale and they therefore "did not have a property interest in the surplus proceeds generated from the tax-foreclosure sale of their properties." *Id*. The Court of Appeals affirmed the Circuit Court's ruling, holding that "defendants acquired their interest in plaintiffs' properties 'by way of a statutory scheme that did not violate due process' and thus defendants were not required to compensate plaintiffs for property that was lawfully obtained." *Id*. at *6.

The *Rafaeli* plaintiffs appealed their takings claim to the Michigan Supreme Court, which reversed, holding that "defendants' retention of those surplus proceeds is an unconstitutional taking without just compensation under Article 10 § 2 of [Michigan's] 1963 Constitution." *Id*. at *2. The Supreme Court wrote that "a former property owner only has a right to collect the surplus proceeds from the tax-

DYKEMA GOSSETT• A PROFESSIONAL LIMITED LIABILITY COMPANY• 400 RENAISSANCE CENTER• DETROIT, MICHIGAN 48243

foreclosure sale; that is, a former property owner has a compensable taking claim if and only if the tax-foreclosure sale produces a surplus." *Id*. at \*41. The Supreme Court made clear that its holding related only to the Michigan Constitution and rejected any finding that the Tax Act violated the United States Constitution, *id.,* and rejected "lost equity" as the measure of damages for the violation:  It also "reject[ed] the premise that just compensation requires the plaintiffs to be awarded the fair market value of their properties, so as to be put in as good of [sic] position had their properties not been taken at all." *Id.* at \*47. On a going-forward basis, the Supreme Court noted that "[n]othing in our holding today prevents the Legislature from enacting legislation that would require former property owners to avail themselves of certain procedural avenues to recover the surplus proceeds." *Id*. at n.108.

## STANDARD OF DECISION

Defendants' Motion to Dismiss is premised on lack of jurisdiction and failure to state a claim. Arguments implicating subject matter jurisdiction are "properly decided under [Rule] 12(b)(1)." *Am. BioCare Inc. v. Howard & Howard Attys, PLLC*, 702 F. App'x 416, 419 (6th Cir. 2017). Rule 12(b)(1) provides for a motion to dismiss for lack of subject matter jurisdiction. To survive a 12(b)(1) motion, a plaintiff has the burden of proving jurisdiction. *Martinez v. Dep't of Homeland Security*, 502 F. Supp. 2d 631, 634 (E.D. Mich. 2007). When a Rule 12(b)(1) motion attacks "the claim of jurisdiction on its face"—as this one does—the standard

mirrors Rule 12(b)(6). *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

Under Rule 12(b)(6)—which applies to Defendants' remaining arguments for dismissal—a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Two "working principles" underlie the Rule's pleading requirements. *Id.* "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

## I. PLAINTIFF LACKS STANDING TO BRING ANY CLAIMS RELATING TO ALLEGED SURPLUS PROCEEDS BECAUSE SHE DEEDED THE PROPERTY TO A NON-PARTY.

The Complaint fails, in its entirety, because Plaintiff quitclaimed whatever interest she had in the Property – including any interest in any alleged "surplus" – to Joshua Bowles, who is not a party to this action. (Ex. 3). Plaintiff lacks legal standing. Standing is a threshold question that asks "whether a plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction to justify exercise of the court's remedial powers on his behalf." *MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 332 (6th Cir. 2002) (internal quotation marks, citations omitted). Plaintiff bears the burden of

7

establishing standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The

Sixth Circuit has articulated the elements of the standing requirement as follows:

> To satisfy Article III's standing requirements, a plaintiff must show:
> (1) it has suffered an "injury in fact" that is (a) concrete and
> particularized and (b) actual or imminent, not conjectural or
> hypothetical; (2) the injury is fairly traceable to the challenged action
> of the defendant; and (3) it is likely, as opposed to merely speculative,
> that the injury will be redressed by a favorable decision.

*Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 523-24 (6th Cir. 2001).

In other words, a plaintiff must have an interest in the outcome of the litigation

to prosecute her claims and, more specifically, must be able to assert that she had an

ownership interest in the subject property. *U.S. v. $515,060.42 in U.S. Currency*, 152

F.3d 491, 498 (6th Cir. 1998). And these requirements are the same whether the

plaintiff's complaint is brought on an individual basis or on behalf of a putative class.

"That a suit may be a class action adds nothing to the question of standing, for even

named plaintiffs who represent a class must allege and show that they personally

have been injured, not that injury has been suffered by other, unidentified members

of the class to which they belong." *Spokeo,* 136 S. Ct. at 1547 n.6.

Plaintiff's Complaint fails this threshold inquiry. Public records establish that

Plaintiff could not have suffered an "injury in fact" due to the County's sale of the

Property after tax foreclosure because she had already transferred her interest in the

Property on June 9, 2017. (Ex. 3). Because she transferred that interest, Tonya

Bowles is not a proper plaintiff here. Her claims should be dismissed.

8

## II.   THIS COURT LACKS JURISDICTION BECAUSE THERE IS AN ADEQUATE STATE COURT REMEDY.

Even if Plaintiff had standing (and she does not), the Complaint fails a second threshold inquiry: this Court lacks jurisdiction under the Tax Injunction Act and principles of comity because Plaintiff has an adequate remedy in state court. In *Wayside Church v. Van Buren County*, 847 F.3d 812 (6th Cir. 2017), properties were foreclosed on because of the failure to pay property taxes. *Id.* at 815. At foreclosure auction, the properties sold for significantly more than the amount of taxes owed. *Id.* Van Buren County retained all proceeds from the sales. The plaintiffs alleged a property interest in the difference between the sale price and the taxes owed, and the County's retention of these "surplus proceeds" violated the Takings Clause. The district court found it had jurisdiction, but dismissed the claims on the merits.

In a 2-1 published opinion, the Sixth Circuit reversed, but declined to reach the merits, for three reasons. *First*, citing to the Supreme Court's now-vacated opinion[4] in *Williamson Cty. v. Hamilton Bank*, 473 U.S. 172 (1985), it found the claims were not ripe because the plaintiffs failed to exhaust state court remedies. *Wayside*, 847 F.3d at 817-22. *Second*, it held that the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341—which "prevents federal courts from awarding declaratory or injunctive relief to plaintiffs who challenge state tax laws" when there is a "plain,

---

[4] *Williamson* was overruled by *Knick v. Scott Twp,* 139 S. Ct. 2162 (2019).

9

adequate, and complete" remedy in state courts—was a jurisdictional bar, because "such a plain, adequate, and complete avenue for redressing the[] claims was available." *Id.* at 822. *Third*, it held that "the principle of comity," which provides a "distinct limitation on federal court jurisdiction over challenges to state tax laws," also prevented federal jurisdiction. *Id.*

So too here. The TIA is jurisdictional, *Hedgepeth v. Tennessee,* 215 F.3d 608, 611-12 & n.4 (6th Cir. 2000), and comity prevents jurisdiction where there is "a plain, adequate, and complete avenue for redressing the[] claims" in state court. This Court lacks subject matter jurisdiction.[5] *Id.* at 822-23.

## III.    DEFENDANTS ARE ENTITLED TO SOVEREIGN IMMUNITY.

Plaintiff's claims also are subject to dismissal because Defendants are entitled to sovereign immunity. Under the Eleventh Amendment, a "damages action against a State in federal court" is barred "when state officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Cady v. Arenac Cty.*, 574 F.3d 334, 342 (6th Cir. 2009) ("The Eleventh Amendment bars § 1983 suits against a state, its agencies, and its officials sued in their official capacities for

---

[5] Defendants note that this issue is the subject of a recent intra-Circuit split: in *Freed v. Thomas*, the Sixth Circuit came to the opposite conclusion. In *Freed*, the panel held that the "TIA does not bar federal jurisdiction" and "the principle of comity does not bar Freed's suit" because the plaintiff was not "challeng[ing] Michigan's taxing authority or the validity of Michigan's tax system." 976 F.3d 729, 737 (6th Cir. 2020). Judge Larsen dissented on the ground that the panel could not overrule *Wayside*'s published opinion. *Id.* at 742.

DYKEMA GOSSETT• A PROFESSIONAL LIMITED LIABILITY COMPANY• 400 RENAISSANCE CENTER• DETROIT, MICHIGAN 48243

damages."). Although municipalities are not ordinarily considered state actors, "[w]here county officials are sued simply for complying with state mandates that afford no discretion, they act as an arm of the State." *Brotherton v. Cleveland*, 173 F.3d 552, 566 (6th Cir. 1999).

That is the case here. Plaintiff's claims against Wayne County and its Treasurer center on Defendants' compliance with a statute that prohibited them from providing Plaintiff with the "surplus proceeds" even if she had been the proper party to claim them. MCL 211.78m(8) provides that "foreclosing governmental unit[s] *shall* deposit the proceeds from the sale of property under this section into a restricted account designated as the 'delinquent tax property sales proceeds for the year ___.'" *Id.* (emphasis added). And it states that:

> Proceeds in that account *shall only be used by the foreclosing governmental unit for the following purposes in the following order of priority*: (a) The delinquent tax revolving fund shall be reimbursed for all taxes, interest, and fees on all of the property, whether or not all of the property was sold. (b) All costs of the sale of property for the year shall be paid. (c) Any costs of the foreclosure proceedings for the year, including, but not limited to, costs of mailing, publication, personal service, and outside contractors shall be paid . . . .

*Id.* (emphasis added). The Michigan Legislature thus directed foreclosing governmental units to spend the "excess surplus" in specific ways, none of which include reimbursing the delinquent taxpayer. *See id.*

State and federal courts examining this precise issue have recognized the constraints imposed on foreclosing governmental units such as Wayne County. In

11

*Wayside Church*, Judge Kethledge noted that "[i]n the County's defense, the Michigan Act appears actually to *require* the County to short the taxpayer the difference between the value of the property forfeited and the amount of taxes and penalties owed." 847 F.3d at 824 (Kethledge, J., dissenting) (emphasis in original). Judge Friedman of this District Court has stated similarly. *Freed v. Thomas*, 2018 U.S. Dist. LEXIS 190424, at *5 (E.D. Mich. Nov. 7, 2018), *vacated on other grounds* ("It is unconscionable that the Michigan legislature has seen fit to adopt a property taxation system that not only permits but requires county treasurers to take title to real property when the taxes thereon are not timely paid and to then retain all of the proceeds obtained for the property at auction . . ."). So has the Michigan Supreme Court. *Rafaeli*, at *12 ("Michigan is one of nine states with a statutory scheme that *requires* the foreclosing governmental unit to disperse the surplus proceeds to someone other than the former owner." (emphasis added).

In short, when enacting the GPTA, Michigan's legislature required foreclosing governmental units (including Defendants) to distribute surplus proceeds in a specific way. Defendants did only what State law required of them, and so "by simply complying with state mandates that afford no discretion, they act[ed] as an arm of the State, not the county." *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 995 (6th Cir. 2019) (internal quotation omitted). The claims against Defendants should therefore be dismissed. *Id.*; *see also Ladd v. Marchbanks*, 971

12

F.3d 574, 579-80 (6th Cir. 2020) (Fifth Amendment takings claim seeking both monetary and declaratory relief may be dismissed when defendants are protected by sovereign immunity).

## IV. THE CLAIMS AGAINST TREASURER SABREE SHOULD BE DISMISSED.

Plaintiff's claims against Wayne County Treasurer Eric Sabree are subject to dismissal for other reasons, too. ***First***, to the extent these claims are raised against Treasurer Sabree in his "personal" capacity, he is entitled to qualified immunity because his good-faith compliance with a statute that had never been found unconstitutional does not violate a clearly-established constitutional right. *See generally Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (setting forth qualified immunity framework); *see specifically Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441 (6th Cir. 2016) ("The Supreme Court tells us that public officials should generally receive qualified immunity when enforcing properly enacted laws."). The Complaint's caption purports to sue Treasurer Sabree in his "personal" capacity as well as his official one; Paragraph 6 of the Complaint purports to bring claims against him in a "personal" as well as official capacity. He is, however, entitled to qualified immunity.

As the Sixth Circuit recognized in *Husted,* "the Supreme Court has *never* denied qualified immunity to a public official who enforced a properly enacted statute that no court had invalidated." 810 F.3d at 441 (emphasis in original). Here,

13

before the Michigan Supreme Court's reversal, the Michigan's Court of Appeals previously held that counties' enforcement of the GPTA's requirements was constitutional. *Rafaeli*, 2017 Mich. App. LEXIS 1704, at \*10-11 ("Plaintiffs' taking argument is without merit."). The existence of this "split by itself amply supports [the Treasurer's] position" that he did not violate a *clearly established* law. *Husted*, 810 F.3d at 443 ("If judges can reasonably disagree about the meaning of the Constitution, we should not punish public officials for reasonably picking one side or the other of the debate.").

*Second*, to the extent these claims are raised against Treasurer Sabree in his official capacity as Wayne County Treasurer, they are duplicative of the claims raised against the County itself. Official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978). So when the entity is named, there is no need to name the entity's officers in their official capacities. *Doe v. Claiborne Cty.*, 103 F.3d 495, 509 (6th Cir. 1996); *Hawthorne-Burdine v. Oakland Univ.*, 158 F. Supp. 3d 586, 602 (E.D. Mich. 2016) ("An official-capacity claim is redundant where the entity is named as a defendant.") (citing *Foster v. Michigan*, 573 F. App'x. 377, 390 (6th Cir. 2014)). *See also Will v Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (affirming the judgment of the Michigan Supreme Court and holding that, "a suit against a state official in his or

her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (internal citations omitted). Treasurer Sabree is not liable for the alleged violations claimed by Plaintiffs, whether in a personal or official capacity.

## V. THE CLAIMS OF ALLEGED VIOLATIONS OF THE U.S. CONSTITUTION SHOULD BE DISMISSED.

The first two counts of the Complaint are Fifth Amendment takings claims under 42 U.S.C. § 1983 and "arising directly under the Fifth Amendment." But the Michigan Supreme Court's decision in *Rafaeli* made clear that its holding related only to the Michigan Constitution; the Court rejected any finding that the Tax Act violated the U.S. Constitution. 2020 Mich. LEXIS 1219, at \*42.

In conducting an historical review of claims for surplus proceeds, the Michigan Supreme Court reasoned that "the Takings Clause under the United States Constitution may afford former property owners a remedy when a tax-sale statute provides the divested property owner an interest in the surplus proceeds and the government does not honor that statutory interest." *Id.* at \*26. But because the Tax Act "does not recognize a former property owner's statutory right to collect these surplus proceeds," federal law does not apply and therefore the *Rafaeli* court looked to common law and the Michigan Constitution, concluding that only the state Constitution "protects a former owner's property right to collect the surplus proceeds following a tax-foreclosure sale." *Id.* at \*27, 38. Because *Rafaeli*'s interpretation of

DYKEMA GOSSETT• A PROFESSIONAL LIMITED LIABILITY COMPANY• 400 RENAISSANCE CENTER• DETROIT, MICHIGAN 48243

15

the Michigan statute rejected a federal constitutional violation, alleged violations of the U.S. Constitution and federal constitutional rights should be dismissed.[6]

## VI.   *RAFAELI* IS PROSPECTIVE ONLY AND BARS THESE CLAIMS.

Nothing in *Rafaeli*'s text supports Plaintiff's presumption that *Rafaeli* should apply retroactively. *Rafaeli* is silent as to its retroactivity, and silent, too, as to any discussion of its practical implementation. But it is unreasonable and dangerous to presume that *Rafaeli*'s holding would be applied retroactively. "*[W]here injustice might result from full retroactivity*, this Court has adopted a more flexible approach, giving holdings limited retroactive or prospective effect. This flexibility is intended to accomplish the 'maximum of justice' under varied circumstances." *Lindsey v. Harper Hosp.,* 455 Mich. 56, 68 (1997) (emphasis added). Full retroactivity of the *Rafaeli* decision would be catastrophic. Since the Tax Act was overhauled in 1999, every county in Michigan has relied on the Act's required retention of surplus sale proceeds. Oakland County estimates that retroactive application of *Rafaeli* would likely cost that county between $40 and $50 million dollars.[7] Forcing counties to pay

---

[6] One panel of the Sixth Circuit – in a divided opinion –held that a federal court can entertain a Takings claim under the U.S. Constitution in a tax foreclosure surplus case. *Freed v. Thomas,* 976 F.3d 729 (6th Cir. 2020). The *Freed* majority decision, criticized by former Michigan Supreme Court Justice and now Sixth Circuit Judge Joan Larsen in her dissent for its failure to follow the recent precedent of *Wayside Church,* is only two months old and may be subject to further appeal.

[7] Cavitt, *Oakland County May Have to Payback $50 Million to Former Property Owners*, Oakland Press, July 22, 2020, https://www.theoaklandpress.com/news/oakland-county-may-have-to-payback-50-

DYKEMA GOSSETT• A PROFESSIONAL LIMITED LIABILITY COMPANY• 400 RENAISSANCE CENTER• DETROIT, MICHIGAN  48243

16

back surplus funds from years past would have unimaginable impact on county operating budgets and could cause unreasonable harm to their ability to provide necessary services. This long-term reliance on settled law, and the fiscal, social, and political disruption that would result if the new ruling "looks back," means that *Rafaeli* is not suitable to be applied retroactively.

Further, the *Rafaeli* decision was an issue of first impression, the resolution of which was not clearly foreshadowed. This unpredictability is evidenced by the multiple actions currently pending in the Michigan Court of Appeals where judgment had already been entered in favor of defendant counties and county treasurers at the time *Rafaeli* was decided by the Michigan Supreme Court. This universal reliance by counties and courts on the Tax Act's approval of transfer of excess funds to a county tax revolving fund necessitates that *Rafaeli* be applied only prospectively. And the Michigan Supreme Court has held that it "must take into account the total situation confronting it and seek a just and realistic solution of the problems occasioned by [a change in law]." *Williams v. Detroit*, 364 Mich. 231, 265 (1961). Here, Plaintiff argues that the *Rafaeli* holding should be applied retroactively for some undefined "statutorily-limited time period." (Compl. ¶ 34). But a retroactive application of *Rafaeli* is unsupported not only by the holding itself, but

million-to-former-property-owners/article_ec0ef380-cc3c-11ea-b609-7b8a07b01a76.html.

17

also by the factors set out by the Michigan Supreme Court for analysis of whether retroactive application of a change in state law is appropriate.[8] Those factors make clear it is <u>not</u> appropriate in this case.

***An Unexpected Change In Law***. "Prospective application of a holding is appropriate when the holding overrules settled precedent or decides an 'issue of first impression whose resolution was not clearly foreshadowed.'" *Lindsey*, 455 Mich. at 68. Nothing could be said to have "clearly foreshadowed" the unanticipated *Rafaeli* holding. It overrules settled precedent, has created a firestorm of litigation, and has every county in the State trying to understand and plan for the drastic change in tax foreclosure law imposed by this decision. Under these facts, the holding should be applied prospectively. In *Bolt v. City of Lansing*, 238 Mich. App. 37 (1999), the Michigan Court of Appeals was tasked with deciding if the Michigan Supreme Court's holding regarding whether a stormwater charge assessed by the City of Lansing to property owners "to fund a federally mandated project is a user fee, or a tax" should be applied retroactively to other cases brought by plaintiffs in other municipalities. *Id.* at 45. In determining that retroactive application was not appropriate, the court noted that

> the Supreme Court's decision announced a new and unanticipated rule

---

[8] "When questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions." *Am. Trucking Ass'n v. Smith*, 496 U.S. 167, 177 (1990).

18

of law concerning a significant public issue of first impression, *i.e.*, whether a charge assessed to property owners to fund a federally mandated project is a user fee, or a tax subject to the Headlee Amendment requirements. The Supreme Court's resolution of this issue differs from case law addressing the user fee/tax inquiry in other contexts.

*Id*. at 45-46. The *Bolt* analysis is directly applicable here:  the Michigan Supreme Court pronounced "a new and unanticipated rule of law concerning a significant public issue of first impression" and directly impacts the rights of owners, municipalities, lienholders, and others with interest in real property. *Id*.

*Rafaeli* is a complete departure from the Michigan Supreme Court's long-standing decisions in *Krench v. Michigan*, 277 Mich. 168, 179 (1936); *James A Welch Co, Inc. v. State Land Office Bd.*, 295 Mich. 85, 93-95 (1940); and *Meltzer v. State Land Office Bd.*, 301 Mich. 541, 545 (1942), which established that former owners have no interest in property once a tax foreclosure is final. And *Rafaeli's* finding that a right remains after foreclosure completely rewrites a concept of property law nearly a century old, a result that is disfavored under Michigan law. The state Supreme Court urges restraint under such circumstances:

> Established rules of property law are to be strictly followed where the rules have induced extensive reliance. Such rules create value, and the passage of time induces a belief in their stability that generates commitments of human energy and capital. Because of the effect a judicial decision might have on past as well as future property rights, a change in a rule of property law should be avoided.

*Bott v. Comm'n. of Nat. Res.*, 415 Mich. 45, 57 (1982).

19

**_Purpose, Reliance, Effect, and Novelty_**. "In deciding whether to give retroactive application, 'there are three key factors' to be considered: '(1) the purpose of the new rule; (2) the general reliance on the old rule; and (3) the effect on the administration of justice.'" *Jahner v. Dept. of Corr.*, 197 Mich. App. 111, 114 (1992) (quoting *People v. Hampton,* 384 Mich. 669, 674 (1971)). One more factor was added by the Michigan Supreme Court: "whether the decision clearly established a new principle of law." *Pohutski v. City of Allen Park,* 465 Mich. 675, 696 (2002). All four factors favor prospective application of *Rafaeli*. And the Michigan Supreme Court has urged flexibility in considering retroactivity, to avoid disruption:  "If a court were absolutely bound by the traditional rule of retroactive application, it would be severely hampered in its ability to make needed changes in the law because of the chaos that could result in regard to prior enforcement under that law." *Placek v. City of Sterling Hts.*, 405 Mich. 638, 665 (1979).

**_First_**, the **_purpose_** of the *Rafaeli* holding was to set aside the common understanding of certain provisions of the Tax Act, to end infringement of the state constitutional prohibition against taking property without just compensation. The Michigan Supreme Court has held that *prospective* application is appropriate when a ruling is needed to correct an interpretation of the law. *Pohutski*, 465 Mich. at 697.

**_Second_**, **_reliance_** on the prior rule was substantial. Every county in Michigan has relied on the Tax Act and its mandate that sale proceeds be used to pay

20

delinquent taxes from *all properties*, and for the costs of foreclosures and foreclosure auctions. Notably, the Michigan Supreme Court has held that "'[t]he involvement of vested property rights, the magnitude of the impact of decision on public bodies taken without warning or a showing of substantial reliance on the old rule may influence [whether a holding should be applied retroactively or prospectively.]'" *Tebo v. Havlik*, 418 Mich. 350, 360 (1984) (internal citations omitted).

Counties across Michigan have relied on the established holding of Michigan courts that a foreclosure removes all right, title, and interest in that property. Applying *Rafaeli* retroactively would result in significant injustice to the counties and their citizens, because most excess sale proceeds have already been used by those counties to reimburse the delinquent tax revolving fund and other expenses allowed under MCL 211.78m(8), or to address blight in their communities. Indeed, the number of purported class actions currently pending across the state, including several that attempt to include every Michigan county as a defendant, clearly indicate the prior universal understanding of the foreclosure surplus law. Several courts took up and decided the surplus funds issue before *Rafaeli* was handed down; those courts ruled in favor of the counties, and there has been significant and "justifiable reliance on court precedent[.]" *Jahner*, 197 Mich. App. at 115.

***Third***, *Rafaeli* should be applied only prospectively because the ***effect*** on the administration of justice would be catastrophic—particularly in those counties

21

where tax foreclosures are more numerous. The *Pohutski* decision is instructive. There, plaintiff-homeowners filed class actions against two cities, after sewage backed up into basements following a storm. The trial courts granted summary disposition to plaintiffs as to their trespass-nuisance claims, holding that those claims were a long-recognized exception to the governmental immunity protection afforded by the state's government tort liability statute. *Pohutski,* 465 Mich. at 680-81. The Michigan Supreme Court reversed, holding that the governmental immunity statute did not contain an exception for trespass-nuisance claims brought against cities or other subdivisions of the State. *Id*. at 690. In doing so, the Michigan Supreme Court expressly overruled prior precedent, and established a new rule that would affect every municipality in the State of Michigan. The *Pohutski* court held that its decision would be applied only prospectively, because retroactivity would wreak havoc on the long-standing shift – by insurance, purchased by cities but not by homeowners – for damage from sewer back-ups.

Significantly, the *Pohutski* court also noted recently-passed legislation addressing claims for sewer back-ups, a statute that created a process and time limit for seeking relief for such claims. That legislation, the court found, should not be interfered with by imposing retroactive application of a new rule of law. Thus, the Michigan Supreme Court concluded that, "prospective application minimizes the effect of this decision on the administration of justice." *Id*. at 697. Here, the

Michigan legislature has taken up the state-wide complications and unanswered questions of *Rafaeli*.[9] Only prospective application of that decision will allow the legislative solutions to sort out the ramifications of *Rafaeli* on pre-existing events.

In *Guerrero v. Dept of Corr.*, 165 Mich. App. 192 (1987), a prisoner-plaintiff sought to have his major misconduct reports deemed retroactively invalid under a recent holding in *Martin v. Dept. of Corrections*, 424 Mich. 553 (1986). In determining that full retroactive application was inappropriate, *Guerrero* held that "retroactive invalidation of the instant disciplinary directives would void literally tens of thousands of disciplinary proceedings and could trigger the early inappropriate release of large numbers of inmates. . . . Therefore, . . . the public's interest in safety requires that the invalidation of defendant's disciplinary directives not be given retroactive application." 165 Mich. App. at 196-97.

If *Rafaeli* is applied retroactively, surplus funds from thousands of foreclosed properties across the state would need to be returned. The monies to repay these funds would necessarily come from the refunding county's operating budget, which would harm that county's ability to provide vital services to its residents, including law enforcement and other emergency services. Layoffs, furloughs, limited

---

[9] Proposed legislation was introduced into the Michigan Senate and reported out of the Finance Committee, passing unanimously and with a recommendation of passage by the Senate, and has been referred to the Committee of the Whole for passage. Journal of the Michigan Senate, Oct. 1, 2020, at 22 (**Ex. 4**, excerpt).

overtime, consolidation, and restricted services would follow. In the words of the *Martin* court, applying *Rafaeli* retroactively would have "devastating consequences" on those counties' ability to carry out daily operations affecting its citizens. This abrupt reversal in the law should be applied only prospectively, allowing only claims that arose on or after the date of the *Rafaeli* decision.

## VII. THE STATUTE OF LIMITATIONS BARS PLAINTIFF'S CLAIMS.

Plaintiff's claims are barred by a two-year statute of limitations. The Tax Act, at MCL 211.78*l*, bars claims to recover money damages where property was foreclosed without adequate notice "2 years after a judgment for foreclosure is entered." Although *notice* of the tax foreclosure is not at issue here, this Court should apply the two-year statute because it is the limitations period most analogous to Plaintiff's claims. *Cf. Hart v. Detroit,* 416 Mich. 488, 503 (1982) (applying a six-year statute of limitations to inverse condemnation action).[10]

As the Michigan Supreme Court has noted, "where the Legislature has not provided a statutory period of limitation governing a particular claim, this Court has not allowed lower courts to apply differing periods on a case-by-case basis. Instead, we have adopted the period of limitation of analogous statutes." *Herweyer v. Clark*

---

[10] Unlike a claim for inverse condemnation, which can result from a slowly-developing taking, as in road construction with resulting increased traffic, the claim here is for a one-time action (*i.e.,* foreclosure) and most resembles the claims under MCL 211.78*l* for insufficient notice.

24

*Highway Servs.*, 455 Mich. 14, 23 (1997) (overruled in part, on other grounds, by *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 489 (2005)). The Michigan Court of Appeals recently renewed that approach, agreeing that when a statute "fails to specify a limitations period," use of "the most closely analogous statute of limitations" is appropriate. *Grosse Pointe Law Firm v. Jaguar*, 317 Mich. App. 395, 408 (2016).

So too here. Because the state Legislature has not provided a statute of limitations that explicitly governs Plaintiff's particular claims, this Court should apply the two-year statute of limitations found in MCL 211.78*l* as that which is "most closely analogous." The claims alleged by Plaintiff, in her own name and for the putative class, are akin to a claim under MCL 211.78*l*: she seeks to recover money damages following tax foreclosure. The state court entered a judgment of foreclosure on March 29, 2017. (Ex. 2). Thus, the limitations period for Plaintiff's claims expired on March 29, 2019. Plaintiff did not file her Complaint until October 2020, after the limitations period had expired.

## CONCLUSION

Defendants request that the Court dismiss all claims, for lack of subject matter jurisdiction, or for failure to state a claim, under Rules 12(b)(1) and 12(b)(6).

Respectfully submitted,

**DYKEMA GOSSETT PLLC**
By: /s/ Theodore W. Seitz
Theodore W. Seitz (P60320)

Dated: December 3, 2020

25

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2020, my assistant electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will provide notice of such filing to all parties and counsel of record.

/s/ Theodore W. Seitz

26