UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONYA BOWLES and
BRUCE TAYLOR,

                Plaintiffs,

                                        Civil Case No. 20-12838
v.                                    Honorable Linda V. Parker

ERIC R. SABREE, COUNTY OF
WAYNE BY ITS BOARD OF
COMMISSIONERS also sometimes
known as CHARTER COUNTY OF
WAYNE BY ITS BOARD OF
COMMISSIONERS, COUNTY OF
OAKLAND, and ANDREW MEISNER,

                Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS (ECF NOS. 24, 25) AND GRANTING PLAINTIFFS' MOTION TO CERTIFY (ECF NO. 33)

      This action arises out of property tax foreclosures in Wayne and Oakland counties.  Plaintiffs Tonya Bowles and Bruce Taylor ("Plaintiffs"), former real property owners, allege violations of their constitutional rights and Michigan law in connection with the tax foreclosure process.  (ECF No. 17.)  Plaintiffs filed a putative class action Complaint on behalf of themselves and other similarly situated individuals against the following Defendants: (i) County of Wayne by its Board of Commissioners, also sometimes known as Charter County of Wayne by

its Board of Commissioners ("Wayne"); (ii) County of Oakland ("Oakland"); (iii)

Wayne Treasurer, Eric Sabree; and (iv) Oakland Treasurer, Andrew Meisner.

In their pleading, Plaintiffs do not challenge the foreclosure of their

property; instead, they assert violations of their rights under the Fifth, Eighth, and

Fourteenth Amendments of the United States and Michigan Constitutions and state

law in connection with the tax auction sales.[1]  Specifically, Plaintiffs claim that

Defendants wrongfully retained the sales proceeds exceeding the taxes they owed

on the properties and seek unpaid "just compensation" and other monetary

damages.  (*Id*. at Pg ID 180-87.)  Plaintiffs are suing Sabree and Meisner in their

individual and official capacities.  (Am. Compl., ECF No. 17 at Pg ID 166, ¶¶ 7,

10.)

Presently before the Court are Oakland's and Wayne's motions to dismiss

(ECF Nos. 24 and 25, respectively), filed pursuant to Rules 12(b)(1) and 12(b)(6)

of the Federal Rules of Civil Procedure.  The motions are fully briefed.  (ECF Nos.

26, 28, 29, 31.)  Further, Oakland filed a supplemental brief related to its motion to

---

[1] Specifically, Plaintiffs assert: (i) two "*Monell*" claims against all Defendants under 42 U.S.C. § 1983 for violations of the Fifth and Fourteenth Amendments (Count I) and violations of the Eighth and Fourteenth Amendments (Count V); (ii) a federal claim against all Defendants arising "directly" under the Fifth and Fourteenth Amendments (Count II); (iii) state law claims against Wayne and Oakland as well as Meisner and Sabree in their official capacities for violation of the Michigan Constitution's Takings Clause (Count IV); and (iii) inverse condemnation (Count III).  (Am. Compl., ECF No. 17.)

dismiss (ECF No. 43), to which Plaintiffs replied (ECF No. 46). Additionally, before the Court is Plaintiffs' motion for class certification. (ECF No. 33.) The parties have fully briefed the motion. (ECF Nos. 35, 36, 38, 39.)

Finding the facts and legal issues sufficiently presented in the parties' briefs with respect to both pending motions, the Court is dispensing with oral argument with respect to the motions pursuant to Eastern District of Michigan Local Rule 7.1(f).

## I.    Factual and Procedural Background

Bowles is the former owner of property located in Wayne at 14730 East State Fair, Detroit, MI ("East State Fair Property"). On March 29, 2017, Treasurer Sabree foreclosed upon the East State Fair Property, on behalf of Wayne. (Am. Compl. ¶¶ 19, 20, ECF No. 17 at Pg ID 168.) The East State Fair Property had a fair market value of approximately $36,600. (*Id*. ¶ 21, Pg ID 169.) On November 11, 2014, Sabree sold the East State Fair Property at a tax auction sale to a private buyer for $14,000.00. (*Id*. ¶ 22, Pg ID 169.)

Taylor is the former owner of two properties located in Oakland: (i) 1401 Midland Blvd, Royal Oak, MI ("Midland Blvd. Property), and (ii) 3916 North Alexander, Royal Oak, MI 48073 ("North Alexander Property"). On February 8, 2017, Treasurer Meisner foreclosed upon the Midland Blvd. Property, on behalf of Oakland. (*Id*. ¶¶ 30, 31, Pg ID 170.) The Midland Blvd. Property had a fair

market value of approximately $240,000.  (*Id*. ¶ 32, Pg ID 170.)  On August 14, 2017, Meisner sold the Midland Blvd. Property at a tax auction sale to a private buyer for $190,000.  (*Id*. ¶ 33, Pg ID 170.)  On February 8, 2017, Meisner also foreclosed upon the North Alexander Property on behalf of Oakland.  (*Id*. ¶¶ 41, 42, Pg ID 172.)  The North Alexander Property had a fair market value of approximately $262,500.  (*Id*. ¶ 43, Pg ID 172.)  On July 26, 2017, Meisner sold the North Alexander Property at a tax auction sale to a private buyer for $162,500.  (*Id*. ¶ 44, Pg ID 172.)

As the Treasurer of Wayne and Oakland, respectively, Sabree and Meisner serve as the county's Foreclosing Governmental Unit ("FGU").  (*Id*. ¶¶ 8, 11, ECF No. 17 at Pg ID 166.)  Following tax foreclosure, Defendants administered an auction sale of the subject properties in which, following the sale, they retained the *entire* amount of proceeds.  (*Id*. ¶ 17, Pg ID 168.)  Plaintiffs allege that Defendants did not return any proceeds in excess of tax delinquency to the former property owners or "provide compensation for the portion of the equity destroyed by underselling the parcel."  (*Id*.)  Plaintiffs generally claim that this practice is a taking without just compensation.  Moreover, Plaintiffs claim that they were not afforded any process, plan, or legal mechanism to seek or achieve just compensation.  (*Id*. ¶¶ 25, 36, 47, Pg ID 169, 171, 173.)  Plaintiffs assert that Wayne and Oakland each "made the affirmative, voluntary, and discretionary

4

decision to select and designate its own treasurer to act as the [FGU]."  (*Id*. ¶ 54, Pg ID 174 (citing Mich. Comp. Laws. 211.78(3)-(6).)

Plaintiffs seek to certify this case as a class action.  (*Id*. ¶ 119, Pg ID 187.) Plaintiffs bring this action on behalf of any other individuals or entities "during the relevant statutorily-limited time period who were subject to the same unconstitutional process by Defendants . . . ."  (*Id*. ¶ 60, Pg ID 175-76.)  "The proposed class consists of all the owners of real property in Oakland and Wayne Counties whose real property, during the relevant time period, was seized through a real property tax foreclosure by Defendants and which was worth and/or sold at tax auction for more than the total [t]ax [d]elinquency and was not refunded the excess [e]quity."  (*Id*. ¶ 61, Pg ID 176.)

## **MOTION TO DISMISS**

## I.   **Defendants' Arguments**

Oakland seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs fail to state a claim under the Fifth Amendment's Takings Clause or "arising directly" under the Fifth and Fourteenth Amendments (Counts I and II) or the Eighth Amendment's Excessive Fine Clause (Count V). (ECF No. 24.)  Further, Oakland argues that this Court should decline jurisdiction under the *Colorado River* doctrine.[2]  (*Id*.)

─────────────────────

[2] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

Wayne seeks dismissal pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6), arguing:

> 1. Ms. Bowles lacks standing to bring this claim for a refund of auction sale proceeds that exceed her unpaid taxes because she deeded her interest in the subject property to another person before the property was sold at tax foreclosure auction.

> 2. This Court lacks jurisdiction because there is an adequate state court remedy.

> 3. The Defendants are entitled to sovereign immunity and therefore all claims against them must be dismissed.

> 4. Treasurer Sabree, a defendant in his official and personal (or individual) capacity, is entitled to qualified immunity, and all claims against him must be dismissed.

> 5. The federal constitutional claims fail as a matter of law.

> 6 The *Rafaeli* decision, which significantly changed Michigan law without warning, should be applied only prospectively, and thus Plaintiffs' claims are barred.

> 7. The claims are barred by the applicable limitations period.

> 8. Even if the individual claims survive, the Court should strike the class allegations.

> 9. The Board of Commissioners of Wayne County is not a proper defendant because Wayne County is a charter county, and its Board of Commissioners is separate from the chief executive that operates the County.

(ECF No. 25 at Pg ID 256.)

## II.    Standard of Review

6

A motion under Rule 12(b)(1) to dismiss a complaint for lack of subject matter jurisdiction must be considered prior to other challenges since proper jurisdiction is a prerequisite to determining the validity of a claim.  *See Gould v. Pechiney Ugine Kulmann & Trefimetaux*, 853 F.2d 445, 450 (6th Cir. 1988). Plaintiffs have the burden of proving jurisdiction in order to survive the motion. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *Abbott v. Michigan,* 474 F.3d 324, 328 (6th Cir. 2007).

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  This presumption is not applicable to legal conclusions, however.  *Iqbal*, 556 U.S. at 668.  Therefore,

7

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citing Twombly, 550 U.S. at 555).

## III.    Applicable Law & Analysis

### A.    General Background Regarding Foreclosures in Michigan

Under Michigan's General Property Tax Act ("GPTA"), Mich. Comp. Laws § 211.1 *et seq*., the county treasurer *or* the State acts as a collection agent for the municipality and is permitted to recover unpaid property taxes, penalties, and fees through tax foreclosure.  Mich. Comp. Laws § 211.78(8)(a).  A county may elect to have its treasurer serve as the FGU and seek judgments of foreclosure.  Otherwise, the State may do so.  *Id*.; *see also id.* § 211.78(3).

On July 17, 2020, the Michigan Supreme Court issued a decision addressing the situation where a tax foreclosure sale yields a price higher than the unpaid taxes that led to the foreclosure.  *Rafaeli, LLC v. Oakland Cty.*, 952 N.W.2d 434 (Mich. 2020).  In *Rafaeli,* former property owners who failed to pay their property taxes and lost their properties to tax foreclosure sued the county and county treasurer "alleging due-process and equal-protection violations as well as an unconstitutional taking."  *Id*. at 442.  Plaintiffs "alleged that [the] defendants, by selling [the] plaintiffs' real properties in satisfaction of their tax debts and retaining the surplus proceeds from the tax-foreclosure sale of their properties, had taken their properties without just compensation in violation of the Takings Clauses of

8

the United States and Michigan Constitutions." *Id*. at 442.  The Michigan Supreme

Court agreed that a taking had occurred in violation of the Michigan Constitution.

The *Rafaeli* Court held that Michigan's "common law recognizes a former

property owner's property right to collect the surplus proceeds that are realized

from the tax-foreclosure sale of property." *Id*. at 459.  The Court further found that

Michigan's 1963 Constitution protected a former owner's right to collect the

surplus proceeds and that "[w]hile the Legislature is typically free to abrogate the

common law, it is powerless to override a right protected by Michigan's Takings

Clause." *Id*. at 460.  Accordingly, the Court held that once a foreclosed property is

sold at auction by the county or county treasurer, the county may collect *only* the

amount needed to satisfy the former property owner's unpaid property tax, interest,

penalties, and fees owed. *Id*. at 461.  Any surplus proceeds remaining after the sale

of the property belong to the former property owner. *Id*.  The Court concluded that

the surplus proceeds must be returned to a former property owner and that the

"failure to do so constitutes a government taking under the Michigan Constitution

entitling [the] plaintiffs to just compensation." *Id*. 463.

Following *Rafaeli*, the Michigan legislature amended the GPTA effective

December 22, 2020.  The amendments provide a procedure that allows a former

property owner to seek the remaining proceeds from the transfer or sale of a

foreclosed property.  The procedure under the GPTA, in part, reads as follows:

(1) A claimant may submit a notice of intention to claim an interest in any applicable remaining proceeds from the transfer or sale of foreclosed property under section 78m, subject to the following:

(a) For foreclosed property transferred or sold under section 78m after July 17, 2020, the notice of intention must be submitted pursuant to subsection (2).

(b) For foreclosed property transferred or sold under section 78m before July 18, 2020, both of the following:

(*i*) A claim may be made only if the Michigan [S]upreme [C]ourt orders that its decision in [*Rafaeli*], applies retroactively.

(*ii*) Subject to subparagraph (*i*), the notice of intention must be submitted pursuant to subsection (6).

Mich. Comp. Laws § 211.78t(1) (internal footnotes omitted).  Courts have construed this provision to mean that a former property owner whose property was transferred or sold *before* July 18, 2020, may file a claim through this procedure only if the Michigan Supreme Court declares that *Rafaeli* applies retroactively, which it has not yet done.  *See Fox v. Cty. of Saginaw by Bd. of Comm'rs*, No. 1:19-CV-11887, 2021 WL 4552989, at *1 n.1 (E.D. Mich. Oct. 5, 2021).; *see also Hall v. Meisner*, No. 20-12230, 2021 WL 4522300, at *2 (E.D. Mich. Oct. 4, 2021).  Since the condition precedent of the Michigan Supreme Court deciding whether *Rafaeli* applies retroactively has not been met, the procedure does not apply to anyone whose property was sold at auction before July 18, 2020.

Wayne argues that under Mich. Comp. Laws § 211.78t(11) and 211.78*l*, that the amended GPTA procedure is the exclusive mechanism for claimants seeking a return of the proceeds from a sale and that the statute of limitations is two years.[3] (ECF No. 25 at Pg ID 264-64.) However, the express language of § 211.78t(1) excludes claimants such as Plaintiffs whose properties were sold before July 18, 2020, absent the condition precedent of a Michigan Supreme Court ruling on *Rafaeli*'s retroactivity. *See* Mich. Comp. Laws § 211.78t(1)(b). Further, the Michigan Court of Claims noted that there was no convincing reason why the amendments to the GPTA that bar recovery could do so completely "in spite of the self-executing right set forth in [Article X section 2] of this state's Constitution." *Hathon v. State, No. 19-000023-MZ*, 2021 WL 1247922, at *2 (Mich.Ct.Cl. Feb. 22, 2021); *see also Freed v. Thomas*, 976 F.3d 729, 741 (6th Cir. 2020) (citing *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019) (holding that the district court's dismissal based on ripeness must be reversed considering the Supreme Court's decision in *Knick*, which overruled the requirement that litigants pursue takings challenges in state court before bringing a § 1983 suit in federal court)). As such, in spite of the amended GPTA, litigants are not precluded from seeking relief in federal court.

---

[3] The Court will later discuss the appropriate statute of limitations for § 1983 actions.

## B.      Standing

Wayne contends that Bowles lacks standing to bring these claims,

individually and as a class representative, because she transferred, via quitclaim

deed, her interest in the property to another individual who is not a party to this

action. (ECF No. 25 at Pg ID 266.)

On June 9, 2017, Bowles transferred the East State Fair Property to her son,

Joshua Bowles, for $1.00 in consideration.[4]  (Ex. 2, ECF No. 25-3.)  This

conveyance occurred approximately three months after the date of the tax

foreclosure judgment of March 29, 2017.  (*See* ECF No. 25-3 at Pg ID 294.)

Plaintiffs argue that Bowles, therefore, held no title to the property on June 9,

2017, and thus was unable to convey the property, rendering "[t]he after-the-

foreclosure quitclaim deed . . . legally meaningless."  (ECF No. 29 at Pg ID 390.)

The Court agrees and concludes that Bowles has standing.

## C.      Subject Matter Jurisdiction

Wayne argues that "this Court lacks jurisdiction under the Tax Injunction

Act and principles of comity because Bowles has an adequate remedy in state

---

[4] The Court may consider public records when reviewing a Rule 12(b)(6) motion.
*See* Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008).
Further, the Court may take judicial notice only "of facts which are not subject to
reasonable dispute."  *Jones v. Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008)
(quoting *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005)).  The
conveyance is recorded in the Wayne County Register of Deeds on June 9, 2017, at
Liber 40, Page 7.

court." (ECF No. 25 at Pg ID 267.)  However, the Sixth Circuit expressly rejected this argument in *Freed v. Thomas*, 976 F.3d 729.

In *Freed*, a former owner of foreclosed property raised a Fifth Amendment Takings Clause claim to surplus proceeds. *Id.* at 732.  While the Sixth Circuit did not address the merits of the plaintiff's claims, it held that the Tax Injunction Act ("TIA") "did not preclude the exercise of federal jurisdiction in this case."[5] *Id.* at 734.  The court reasoned that the plaintiff was not attempting to violate the TIA by challenging Michigan's authority to tax, but was "[challenging] Michigan's post-collection failure to reimburse him for the excess proceeds from the sale of his property and the State's refusal to compensate him for the excess after-tax equity of his property." *Id.* at 734.  The court also held that the principle of comity between the federal court and State government did not bar the federal court lawsuit because the plaintiff was not challenging "the validity of Michigan's tax system."[6] *Id.* at 737.  Accordingly, the TIA or principals of comity do not bar

---

[5] 28 U.S.C. § 1341, the TIA, provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

[6] "While the principle of comity is a practice of abstention, and is not jurisdictional, the Supreme Court has 'long recognized that principles of federalism and comity generally counsel that [federal] courts should adopt a hands-off approach with respect to state tax administration.'" *Freed*, 976 F.3d at 737 (quoting *Nat'l Priv. Truck Council, Inc. v. Okla. Tax Comm'n*, 515 U.S. 582, 586, (1995)).

federal jurisdiction.  *Freed*, 976 F.3d at 732.  Therefore, the claims are not

precluded on jurisdictional grounds.  Several federal judges in Michigan have

reached the same conclusion.  *See Fox*, No. 19-CV-11887, 2021 WL 120855, at *3

(E.D. Mich. Jan. 13, 2021); *Arkona, LLC v. Cty. of Cheboygan*, No. 19-CV-12372,

2021 WL 148006, at *3 (E.D. Mich. Jan. 15, 2021); *Grainger, Jr. v. Cty. of

Ottawa*, No. 1:19-CV-501, 2021 WL 790771, at *3 (W.D. Mich. Mar. 2, 2021).

### D.    Sovereign Immunity

The Eleventh Amendment bars civil actions against a State and its agencies

and departments unless the State waived its immunity and consented to suit, or

Congress has abrogated that immunity.  *See Will v. Michigan Dep't of State Police*,

491 U.S. 58, 66 (1989).  Michigan has not consented to be sued for civil rights

actions in federal court, *see Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986),

nor did Congress abrogate Eleventh Amendment immunity when it enacted §

1983.  *Quern v. Jordan*, 440 U.S. 332, 341 (1979).  Wayne argues that it operates

as an arm of the State, and thus enjoys the same sovereign immunity as the State.

(ECF No. 25 at Pg ID 269 (citing *Brotherton v. Cleveland*, 173 F.3d 552, 566 (6th

Cir. 1999).)

A county cannot be deemed to act as an arm of the State for Eleventh

Amendment purposes when it has a choice to act, under a permissive statutory

scheme, rather than a compulsory duty to act.  Under the GPTA, counties in

Michigan can voluntarily elect for their treasurer to serve as the FGU.  *See* Mich.

Comp. Laws § 211.78(3); *see also id*. § 211.78(8)(a).  As such, counties can

choose whether their treasurer will engage in the foreclosure process under the

GPTA or whether it will have the State do so.  The GPTA, therefore, is a

permissive statutory scheme.  "The distinction between a permissive and

compulsory statutory scheme for purposes of sovereign immunity is amply

supported by Sixth Circuit precedent."  *Fox*, 2021 WL 120855, at *7 (citing

*Brotherton*, 173 F.3d 555 (holding that county coroner was not acting as an arm of

the State when it voluntarily implemented a policy and acted without state

compulsion)).  Similarly here, the counties voluntarily acted as FGUs without

compulsion.  *Id.* at *6.  As such, the counties are not entitled to sovereign

immunity.

### E.    Qualified Immunity

According to the doctrine of qualified immunity, "government officials

performing discretionary functions generally are shielded from liability for civil

damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  *Harlow v.

Fitzgerald,* 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231

(2009).  "Public officials thus are eligible for qualified immunity if (1) they did not

violate any constitutional guarantees[;] or (2) the guarantee, even if violated, was

not 'clearly established' at the time of the alleged misconduct." *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016) (citing *Pearson*, 555 U.S. at 232). "Both inquiries are 'objective,' as they turn on what the law is today and whether it was clearly established at the time of the challenged action." *Husted*, 810 F.3d at 440 (citing *Harlow,* 457 U.S. at 818-19).

Wayne argues that Sabree is entitled to qualified immunity because, before the Michigan Supreme Court's reversal in *Rafaeli*, the Michigan Court of Appeals held that counties' enforcement of the GPTA's requirements and retention of surplus proceeds was constitutional.  (ECF No. 25 at Pg ID 272 (citing *Rafaeli, LLC v. Oakland Cty.*, No. 330696, 2017 WL 4803570, at *1 (Mich. Ct. App. Oct. 24, 2017), *rev'd and remanded*, 505 Mich. 429, 952 N.W.2d 434 (2020).)  In other words, prior to the Supreme Court's decision in *Rafaeli*, there was no clearly established law holding that the practice of the counties' treasurers was unconstitutional.  (ECF No. 25 at Pg ID 272 (quoting *Husted*, 810 F.3d at 443 ("If judges can reasonably disagree about the meaning of the Constitution, we should not punish public officials for reasonably picking one side or the other of the debate.").)  The Court agrees.

Because the Michigan Court of Appeals reached an opposite conclusion in 2017 and held that former property owners were not entitled to the surplus proceeds from a sale, there was not clearly established law informing Sabree or

Meisner that their practice of retaining the surplus proceeds was unconstitutional. As such, Sabree and Meisner are entitled to qualified immunity in their individual capacities.[7]

### F. Official Capacity

With respect to Bowles' claims against Sabree in his official capacity, Wayne argues that such claims are duplicative of the claims against the county. (ECF No. 25 at Pg 272-73.) "When the county is named, there is no need to name the county's officers in their official capacities." (*Id*. (citing cases).) Bowles concedes in response that the official capacity claims could be duplicative but maintains "when county treasurers act as FGUs, they might be solely acting on behalf of their own county office (created by the Michigan Constitution) rather than on behalf of their respective county."[8] (ECF No. 29 at Pg. ID 395 (citing *Genesee Cty. Bd. of Comm'rs v. Cherry*, No. 13-100456 (Mich. Cir. Ct. 2014)); *see also* (Ex. B, ECF No. 29-3.)

The plaintiffs in *Arkona* made a similar argument as Plaintiffs, and the court found their reliance on *Cherry* misplaced. *Arkona*, 2021 WL 148006, at *4 (noting

---

[7] The Honorable Thomas L. Ludington reached the same conclusion in a similar case. *Fox*, 2021 WL 120855, at *8.

[8] Plaintiffs also offer if "Sabree concedes his acts, in his official capacity, are solely attributable to Wayne County rather than his specific office, then dismissal of the official capacity claims as duplicative is proper." (ECF No. 29 at Pg ID 395.) Wayne does not concede in its response. (*See* ECF No. 31 at Pg ID 455-56.)

that "nothing in *Cherry* supports the notion that county treasurers acting as FGU[s] do so on behalf of some entity other than the county.")  *Cherry* concerns the authority of a county treasurer to act in certain instances such as in contracting with a Land Bank and use of a county's delinquent tax revolving fund under the GPTA.  *Cherry*, slip op. at 7.  The court noted that the position of county treasurer "is an elective county office whose duties and powers are provided by law . . . ." and that under Mich. Comp. Laws §§ 211.87(b)(2) and 211.87(c)(2) the county treasurer is an agent for the county authorized to enter contracts.  *Id*. at 8.  As such, *Cherry* does not state that the county treasurer is acting solely on behalf of its own office.

Nevertheless, the Court must pause first to decide whether Plaintiffs have properly named the county as a defendant.  Plaintiffs are suing "County of Wayne by its Board of Commissioners" or "Charter County of Wayne by its Board of Commissioners."  According to Wayne, as a charter county, its Board of Commissioners is separate from the chief executive that operates the County. (ECF No. 25 at Pg ID 262 n.4 (explaining Wayne's contention in greater detail that the Board of Commissioners does not operate or control Wayne).)  Plaintiffs respond that Wayne need only to confirm that the county has been properly named, and then they will concede that Sabree should be dismissed to the extent he is sued

in his official capacity.  (ECF No. 29 at Pg ID 396.)  Wayne does not confirm its

correct naming or accept Plaintiffs' offer.  (*See* ECF No. 31 at Pg ID 455-56.)

Due to the uncertainty of whether Wayne County is properly named as a

defendant, the Court declines at this time to dismiss Sabree in his official capacity

based on duplicativeness.  *See e.g.*, *Fox*, 2021 WL 120855, at *8 (citing *Monel,*

436 U.S. at 690 n.55).

### G.    Abstention

Relying on the *Colorado River* doctrine, Oakland "request[s] that the Court

decline jurisdiction because there is a parallel state-court proceeding."  (ECF No.

24 at Pg ID 225-26 (citing *Colorado River Water Conservation District*, 424 U.S.

at 800.)  According to Oakland, Taylor is a member of a certified class action

lawsuit pending in the Oakland County Circuit Court, *Rafaeli v. Oakland County*,

No. 15-147429-CZ (Oakland Cty. Cir. Ct. filed June 8, 2015).  (ECF No. 24 at Pg

ID 226.)  The class certified in that action is defined as follows:

> All former owners of an interest in real property located in
> Oakland County, Michigan whose interest was foreclosed by
> Oakland County and the real property was sold at a tax-
> foreclosure sale for more than the amount owed in unpaid taxes,
> interest, penalties, and fees related to the forfeiture, foreclosure,
> and sale of that property. The class period is June 8, 2009
> through the date of final judgment in this matter.

(ECF No. 24-3 at Pg ID 238.)

Under the *Colorado River* doctrine, a federal court may abstain from

exercising jurisdiction over a matter "in deference to a parallel state-court

proceeding if abstention will best promote the values of efficient dispute resolution

and judicial economy." *Gentry v. Wayne Cty.*, No. 10-cv-11714, 2010 WL

4822749, at *2 (E.D. Mich. Nov. 22, 2010) (citing *Colorado River*, 424 U.S. at

817-18; *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998)).  As the

Sixth Circuit explained in *Romine*, the *Colorado River* Court provided that,

"despite the 'virtually unflagging obligation of the federal courts to exercise the

jurisdiction given them,' . . . considerations of judicial economy and federal-state

comity may justify abstention in situations involving the contemporaneous exercise

of jurisdiction by federal and state courts."  *Romine v. Compuserve Corp.*, 160

F.3d at 339 (quoting *Colorado River*, 424 U.S. at 817).  *Colorado River* abstention

"is only appropriate in extraordinary circumstances."  *Baskin v. Bath Twp. Bd of

Zoning Appeals*, 15 F.3d 569, 571 (6th Cir. 1994) (citing *Colorado River*, 424 U.S.

at 817).

The Sixth Circuit has identified two prerequisites for abstention under the

*Colorado River* doctrine.  *Romine*, 160 F.3d at 339-40.  First, the court must find

that there are parallel and concurrent state and federal actions. [9] *Id.* at 339.

Second, the court must consider several factors:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained … (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Id.* at 340-41 (internal citations omitted).  In addressing these factors, Oakland

offers that Taylor is a member of a certified class pending in state court, the

Michigan Supreme Court's holding in *Rafaeli* is the "source of governing law",

and "[n]umerous individual lawsuits have been filed in Oakland County and

reassigned to the *Rafaeli* court."  (ECF No. 24 at Pg ID 226.)  Oakland's analysis

---

[9] Even where it is alleged that a class action is pending in state court, that does not itself render those proceedings "parallel" to this federal action.  Plaintiffs argue that this lawsuit is distinguishable from proceedings in state court as it seeks to protect Plaintiffs' Fifth and Eighth Amendment rights following passage of amendments to GPTA.  (ECF No. 26 at Pg ID 321.)  Plaintiffs allege that the GPTA "divests state courts of jurisdiction to hear and provide relief . . .[,] and instead requires the use of a state-created administrative process."  (*Id.* (citing Mich. Comp. Laws. 211.78l(1).)  Lastly, Plaintiffs assert that there is no remedy in the state courts for fair market value and that pursuant to *Knick*, that a property owner has a Fifth Amendment entitlement to just compensation and may bring a claim under § 1983 for deprivation of that right.  (*Id*. at 322 (citing *Knick*, 139 S. Ct. at 2170 (holding that "[t]he Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner.").)  Oakland, however, does not address these raised distinctions.  (*See* ECF No. 28.)  As such the Court will not address the preliminary question of whether the actions are parallel.

of the *Romine* factors is so cursory as to be waived.  *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 441 (6th Cir. 2002) (observing that "perfunctory and undeveloped arguments" are waived); *Slater v. Potter*, 28 F. App'x 512, 513 (6th Cir. 2002) (citing United States v. Elder, 90 F.3d 1110, 1118 (6th Cir. 1996)) (indicating that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). As such, the Court declines its invitation to abstain from deciding Taylor's claims.

## H.   Statute of Limitations

Wayne argues that Bowles' claims are barred by a two-year statute of limitations added to the GPTA post-*Rafaeli*.  (ECF No. 25 at Pg ID 281-82 (citing Mich. Comp. Laws §§ 211.78t, 211.78l).)  However, this lawsuit was filed on October 22, 2020, before the amendments' effective date of December 22, 2020. The limitations period applicable to the current lawsuit, therefore, cannot be the one found in the amendments to the GPTA.  *See Davis v. State Employees' Ret. Bd.*, 272 Mich App 151, 160-161 (2006) ("[S]tatutes of limitations enacted by the Legislature are to be applied prospectively absent a clear and unequivocal manifestation of a legislative preference for retroactive application.")

The appropriate statute of limitations for a claim brought pursuant to § 1983 is the State's statute of limitations for personal injury actions.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citations omitted).  For § 1983 actions arising in

Michigan, the applicable limitations period is three years.  *Wolfe*, 412 F.3d at 714

(citing Mich. Comp. Laws. § 600.5805(10); *see also Estate of Majors v. Gerlach*,

821 F. App'x 533, 537 (6th Cir. 2020)).

When calculating the statute of limitations, Wayne references the date of tax

foreclosure.  (ECF No. 25 at Pg ID 282.)  However, the limitations period did not

begin to run until a remedy became available, which would be the date of tax sale.

*See Grainger, Jr.*, 2021 WL 790771, at *6 (holding that "the [p]laintiff had three

years from [the date of sale], to file his federal claims brought under § 1983.")

Here the date of sale for the East State Fair Property is September 5, 2017.[10]  As

such, Bowles had until September 5, 2020 to file this lawsuit.  It was not filed until

October 22, 2020.

Nevertheless, Bowles argues that her claim is not time barred because the

Michigan Supreme Court issued an Order suspending statutes of limitations due to

the emergency of the Coronavirus Disease ("Covid 19") (ECF No. 29 at Pg ID 398

n.6.); *see also* (Ex. D, E, F, ECF Nos. 29-5, 29-6, 29-7.)  Wayne does not address

this argument, and therefore concedes that the Michigan Supreme Court's order

---

[10] In Plaintiffs' Amended Complaint, Plaintiffs plead a date of sale of November 11, 2014.  (Am. Compl. ¶ 22, ECF No. 17 at Pg ID 169.)  It appears that this was in error as Plaintiffs allege a foreclosure date for the East State Fair Property of March 29, 2017.  The Amended Complaint does not include any exhibits or attachments to clarify the discrepancy.  In Plaintiffs' response to Wayne's motion, it lists the date of sale as September 5, 2017.  (ECF No. 29 at Pg ID 398 n.6.)

renders Bowles' claims timely filed.  (See ECF No. 31.)  Moreover, judges have interpreted the Michigan Supreme Court's orders as tolling statutes of limitations. *See Mackey v. Rising*, No. 20-13408, 2021 WL 4034226, at *2 (E.D. Mich. Sept. 3, 2021) (holding that the Michigan executive orders and Administrative Orders issued by the Michigan Supreme Court during the pandemic tolled the statute of limitations in a § 1983 action for a period of a little over three months); *see also Bownes v. Borroughs Corp.*, No. 1:20-CV-964, 2021 WL 1921066, at *2 (W.D. Mich. May 13, 2021) (holding that the Michigan Supreme Court's Administrative Orders tolled the statute of limitations 101 days).

For these reasons, the Court holds that Bowles' claims are not time barred.

## I.       Retroactive Application

Wayne argues that *Rafaeli* should not apply retroactively, and that Plaintiffs' claims should be barred.  (ECF No. 25 at Pg ID 274.)  As noted in the GPTA, the issue of retroactivity of *Rafaeli* has been left unanswered by the Michigan Supreme Court.  *See* Mich. Comp. Laws § 211.78t(1)(b)(*i*).  "The general rule is that judicial decisions are given complete retroactive effect."  *Lesner v. Liquid Disposal, Inc.*, 643 N.W.2d 553, 560 (Mich. 2002) (citing *Michigan Ed. Emp. Mut. Ins. Co. v. Morris*, 596 N.W.2d 142 (Mich. 1999)).  However, the Michigan Supreme Court has held when overruling prior case law, the court "gauges (1) the purpose served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of

retroactivity on the administration of justice." *Lesner*, 643 N.W.2d at 560.  As

noted by Wayne, Michigan common law also recognizes a fourth factor, "whether

the decision clearly established a new principle of law."  (ECF No. 25 at Pg ID 278

(citing *Pohutski v. City of Allen Park*, 641 N.W.2d 219, 233 (Mich. 2002).)

The Court finds, however, that *Rafaeli* did not simply create a new rule or a

new principle of law, rather it enforced and vindicated a constitutional right

protected by Michigan's 1963 Constitution.  *Rafaeli*, 952 N.W.2d at 460.  *Rafaeli*

returned our law to protect former property owners from unconstitutional takings

without just compensation.  *Id.*; *see also Rowland v. Washtenaw Cty. Rd. Comm'n*,

731 N.W.2d 41, 55 (Mich. 2007) (citing *County of Wayne v. Hathcock,* 684

N.W.2d 765, 768 (Mich. 2004) (explaining that the court's decision did not

"announce a new rule of law, but rather returns our law to that which existed

before [previous holding] and which has been mandated by our [Michigan]

Constitution since it took effect in 1963.")).  The Article X Section 2 right to

surplus proceeds in Michigan existed before the *Rafaeli* decision, so the Court need

not consider the factors as to whether the new rule should be retroactive.

The Michigan Court of Appeals also recently held that *Rafaeli,* similar to

*Hathcock*, should be applied retroactively.  *Proctor v. Saginaw Cty. Bd. of

Commissioners*, No. 349557, 2022 WL 67248, at *7 (Mich. Ct. App. Jan. 6, 2022).

The court further reasoned that the Michigan Supreme Court's declination to

address retroactivity in its first ruling post *Rafaeli* supports its conclusion.  *Id*. at *9

(citing *Jackson v. Southfield Neighborhood Revitalization Initiative*, 953 N.W.2d

402, 403 (Mich. 2021).)  The Court finds that *Rafaeli* should be applied

retroactively.

### J.    Merits

#### i.    Count I: Fifth Amendment Taking

Plaintiffs allege a Fifth Amendment takings claim under § 1983 in Count I

of their Amended Complaint.  (Am. Compl. ¶¶ 70-80, ECF No. 17 at Pg ID 180-

81.)  Oakland contends that this claim lacks merit because Taylor has not properly

alleged that he was entitled to surplus proceeds, instead alleging he is entitled to

the fair market value of his former properties.  (ECF No. 24 at Pg ID 222.)  In

other words, Oakland contends that because Plaintiffs allege that they are entitled

to the fair market value minus tax delinquency, that their claim must fail.  Oakland

further argues that Taylor should not be allowed to amend his complaint to request

surplus funds.  (*Id*. at 221-22.)

The *Rafaeli* Court made clear that "just compensation" does not include the

equity or fair market value of a foreclosed property.  What must be paid to the

former property owner is only "[the] proceeds from the tax-foreclosure sale in

excess of the delinquent taxes, interest, penalties, and fees reasonably related to the

foreclosure and sale of the property—no more, no less."  *Id*. at 466; *see also id*. n.

134.  Therefore, just compensation is not based on the market value or equity of the property but the actual sale amount at auction.

Despite the holding of *Rafaeli*, Plaintiffs steadfastly argue that the property interest at issue is lost equity, rather than the *Rafaeli* standard of lost surplus proceeds.  (Am. Compl. ¶ 18, 27, 38, 49 ECF No. 17 at Pg ID 168, 169, 171, 173.)  In response to Oakland's motion, Plaintiffs again assert that they are entitled to the fair market value and "destroyed equity" by the counties' underselling.  (ECF No. 26 at Pg ID 306-7.)  As noted by Plaintiffs, at least one judge in this district has pointed out, that the difference in these property interests, surplus or market value, is limited to damages and does not prevent a court from finding that the complaint "contain[s] either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory."  (ECF No. 26 at Pg ID 314-15 (quoting *Arkona*, 2021 WL 148006, at *8 n.6 (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (emphasis in original).)  Accordingly, the Court finds that Plaintiffs have plead some viable legal theory although the appropriate property interest is only the surplus proceeds from the sale as held by *Rafaeli*.

Wayne argues that Plaintiffs' claim in Count I lacks merit because *Rafaeli* applies only to the Michigan Constitution and rejected a finding that the GPTA violated the United States Constitution.  (ECF No. 25 at Pg ID 274 (citing *Rafaeli*,

477, 952 N.W.2d at 462).)  However, the Sixth Circuit rejected this contention in

*Freed*, reasoning:

> The Civil Rights Act of 1871 expressly provides a federal cause
> of action to litigants who feel that a state or local official has
> violated their rights under the United States Constitution.  *See*
> 42 U.S.C. § 1983.  Thus, "since the Civil Rights Act of 1871,
> part of 'judicial federalism' has been the availability of a
> federal cause of action when a local government violates the
> Constitution."  *Knick*, 139 S. Ct. at 2177 n.8.  As a result, Freed
> may invoke the protection of the federal courts to seek
> compensation for an alleged unconstitutional taking by a local
> government in violation of the Fifth Amendment.

*Freed*, 976 F.3d at 737.  Therefore, Plaintiffs can plausibly allege a taking without

just compensation in violation of the Fifth Amendment.

### ii.     Count II: Fifth Amendment Taking "Arising Under"

Plaintiffs also allege a violation of the Fifth and Fourteenth Amendments in

Count II, however, they attempt to assert this claim directly under the Fifth

Amendment rather than under 42 U.S.C. 1983.  (*See* Am. Compl. ¶¶ 81-90, ECF

No. 17 at Pg ID 181-82.)  Oakland argues in response that "the law is well

established that § 1983 is the exclusive remedy for an alleged constitutional

violation."  (ECF No. 24 at Pg ID 222-23 (citing e.g., *Foster v. Michigan*, 573 F.

App'x 377, 390 (6th Cir. 2014).)  The Court agrees that such claims must be raised

under 42 U.S.C. § 1983.  *Thomas v. Shipka*, 818 F.2d 496, 499 (6th Cir. 1987),

*vacated on other grounds*, 488 U.S. 1036 (1989) (explaining that § 1983 is the

exclusive remedy for the alleged violations of a plaintiff's constitutional rights).

### iii.    Counts III and IV: State Law Claims

Counts III and IV allege state claims for inverse condemnation and a violation of Article X, Section 2 of the Michigan Constitution.  (*See* Am. Compl. ¶¶ 91-109, ECF No. 17 at Pg ID 183-85.)  Oakland argues that the Court should not exercise supplemental jurisdiction over Plaintiffs' state claims if the Court dismisses the federal constitutional claims.  (ECF No. 24, 226.)  As the Court has found that Plaintiffs can succeed on the merits on its Fifth Amendment takings claim, the court need not address this argument.

However, in reviewing Plaintiffs' Complaints, Counts III and IV are identical in content save with Count IV adding that the conduct violates Article X, Section 2 of the Michigan Constitution.  *See* (ECF No. 1 at Pg ID 16-18.) Decisions from this district have found that state claims for inverse condemnation and a takings claim under Article X, Section 2 of the Michigan Constitution are duplicative.  *Fox*, 2021 WL 120855, at *13 (quoting *Biff's Grills, Inc. v. Mich. State Highway Comm'n*, 254 N.W.2d 824, 826 (Mich. Ct. App. 1977) ("Michigan recognizes the theory of inverse condemnation as a means of enforcing the constitutional ban on uncompensated takings of property.")); *Grainger*, 2021 WL 790771, at *12 (holding that "inverse condemnation claim is the proper vehicle for enforcing the constitutional prohibition on takings without compensation").

Accordingly, Count III will proceed, and the Court will dismiss Count IV as duplicative.

### iv.    Count V: Eighth Amendment Claim

Count V alleges a violation of the Eighth and Fourteenth Amendments under § 1983.  Plaintiffs allege that "Defendants' forfeiture-as-a-fine of Plaintiffs' equity is pled to be in violation of the Eighth Amendment."  (ECF No. 26 at Pg ID 319.)  The Eighth Amendment states that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (quoting *Austin v. United States*, 509 U.S. 602, 609-10 (1993)).  The clause applies only to fines "directly imposed by, and payable to, the government" and only to fines that are punitive rather than wholly remedial.  *Austin*, 509 U.S. at 609-10.  "A punitive fine violates the Eighth Amendment's 'Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense.'"  *Fox v. Cty. of Saginaw*, 2021 WL 120855, at *13 (quoting *United States v. Blackwell*, 459 F.3d 739, 771 (6th Cir. 2006)).

Plaintiffs argue that the forfeiture of equity is an excessive fine in violation of the Eighth Amendment similar to civil forfeiture.  (ECF No. 26 at Pg ID 317 (citing *Austin v. United States*, 509 U.S. 602, 614 (1993) (holding that the Eighth

Amendment's excessive fine clause applies to in rem civil forfeiture where the

defendant is convicted of a crime).)  However, the facts here are distinguishable

from civil forfeiture.  The *Rafaeli* court reasoned:

> In this case, plaintiffs did not use their properties for illicit purposes.
> They simply failed to pay their property taxes, which is not a criminal
> offense. Accordingly, we conclude that the Court of Appeals
> improperly conflated the meaning of 'forfeiture' in an unrelated area
> of law with the meaning of 'forfeiture' as expressly described under
> the GPTA.

*Rafaeli*, 952 N.W.2d at 447–48 (2020) (footnotes omitted).  Here, there is nothing

to suggest that the GPTA is punitive.  Further, Wayne points out that "[c]ourts

have uniformly dismissed direct Fifth and Eighth Amendment claims brought in

nearly identical cases."  (ECF No. 31 at Pg ID 457 (citing *Fox*, 2021 WL 120855,

at *14; *Arkona*, 2021 WL 148006, at *9; *Freed v. Thomas*, No. 17-CV-13519,

2021 WL 942077, at *5 (E.D. Mich. Feb. 26, 2021); and *Grainger*, 2021 WL

790771, at *12).)

## IV.   Conclusion

The Court finds that Plaintiffs claims are not barred by any threshold issues

including standing, subject matter jurisdiction, sovereign immunity, or statute of

limitations.  The Court declines the invitation to abstain from deciding Taylor's

claims.  The Court finds that Sabree and Meisner are entitled to qualified immunity

in their individual capacities.  However, claims against Sabree in his official

capacity will remain based upon the above reasoning.  Plaintiffs have also

31

successfully plead claims of a federal takings clause violation and state law inverse

condemnation.

## MOTION FOR CLASS CERTIFICATION[11]

Plaintiffs ask the Court to certify this matter as a class action under Federal

Rule of Civil Procedure Rule 23(a) and (b)(3), with the Class defined as:

> All property owners formerly owning property from within the
> counties of Wayne and Oakland who, during the relevant
> statutory period, had said property seized by Defendants via the
> General Property Tax Act, MCL 211.78 et seq, which was
> worth more and/or was sold at tax auction for more than the
> total tax delinquency and was not refunded the excess/surplus
> equity but excluding any property owner who has filed their
> own post-forfeiture civil lawsuit to obtain such relief.

(ECF No. 33 at Pg ID 476.)  A party seeking class certification must meet the

requirements of Federal Rule of Civil Procedure 23(a) *and* (b)(1), (2), *or* (3).  The

movant bears the burden of "establish[ing] his right" to class certification.  *Beattie*

*v. Centurytel., Inc.*, 511 F.3d 554, 560 (6th Cir. 2007).  To satisfy Rule 23(a), four

---

[11] Oakland and Wayne argue that Plaintiffs' motion for class certification is
premature.  (ECF No. 35 at Pg ID 553; ECF No. ECF No. 36 at Pg ID 572-76.)
Plaintiffs disagree, noting that the Honorable Thomas L. Ludington certified a
class in two cases in this district before deciding the defendants' motions to
dismiss.  (ECF No. 39 at Pg ID 623 (citing *Fox v. Cty. of Saginaw*, No. 19-CV-
11887, 2020 WL 6118487 (E.D. Mich. Oct. 16, 2020); *Arkona, LLC v. Cty. of
Cheboygan*, No. 1:19-CV-12372, 2020 WL 4366027 (E.D. Mich. July 30, 2020).)
*See also Fox*, 2020 WL 6118487, at *6 (citing *In re Am. Med. Sys., Inc.*, 75 F.3d
1069, 1077 (6th Cir. 1996) (holding that Fed. R. Civ. P. 23 requires that class
certification be decided as soon as practicable and if the record is adequate for
resolving the issues.)).  The Court does not find Plaintiffs' motions premature.

prerequisites must be met: (1) the class must be "so numerous that joinder of all members is impractical;" (2) there must be "questions of law or fact common to the class;" (3) "the claims … of the representative parties" must be "typical of the claims … of the class;" and (4) "the representative parties" must be capable of "fairly and adequately protect[ing] the interests of the class."  Fed. R. Civ. P. 23(a).

Plaintiffs seek certification under the "predominance" subsection in Rule 23(b)(3).  (ECF No. 33 at Pg ID 484.)

## I.      Rule 23(a) Prerequisites

### A.     Numerosity

There is no "strict numerical test" that must be met for class certification. *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir. 1976).  The requirement can be satisfied with a class size as low as 35 people.  *See Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974) (finding class sufficiently numerous at 35)).  Rather, numerosity "requires examination of the specific facts of each case . . .."  *Gen. Tel. Co. of the N.W., Inc. v. EEOC*, 446 U.S. 318, 330 (1980).  "When class size reaches substantial proportions, however, the impracticability requirement is usually satisfied by the numbers alone."  *In re Am. Med. Sys., Inc.*, 75 F.3d at, 1079 (citing 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.05, at 3–26 (3d ed. 1992).  In addition to the number of proposed members, then, courts commonly consider such factors as the

ability of the members to bring individual lawsuits and whether class certification would promote judicial economy. *See Malam v. Adducci*, 475 F. Supp. 3d 721, 734 (E.D. Mich. 2020), *amended*, No. 20-10829, 2020 WL 4818894 (E.D. Mich. Aug. 19, 2020).

Plaintiffs contend that there are more than 6,900 qualifying properties that have been sold with surplus proceeds since 2014.[12]  (ECF No. 33 at Pg ID 478.) Wayne argues that "Bowles cannot meet Rule 23's numerosity requirement because it is impossible for this Court to realistically determine how large the class would be with the information provided by Bowles."  (ECF No. 36 at Pg ID 577.) In *Fox*, based on public records of foreclosures, the court found that plaintiff's estimate of 9,000 putative class members was sufficient to satisfy the numerosity requirement.  *Fox*, 2020 WL 6118487, at *8.  Given that the claims here are almost identical to the claims brought by former property owners in *Fox*, it is likely that the putative class will well exceed 35 members.  *See Afro Am. Patrolmen's League*, 503 F.2d at 298.  The Court, therefore, finds that the numerosity element is satisfied as Plaintiffs estimated class size is numerous as to make joinder "impracticable".  *See* Fed. R. Civ. P. 23(a)(1).

---

[12] Although Plaintiffs represent this fact in its motion for class certification, the accompanying reference to Exhibit C in support of this contention is not attached. (*See* ECF No. 33-4 (reading "Plaintiffs will be submitting Exhibit C under seal via a separately filed motion which will be shortly forthcoming.").)  However, Plaintiffs have yet to offer such exhibit.

Wayne also argues that Plaintiffs must meet a minimum standard of definiteness because Plaintiffs' proposed class definition has an undefined statutory period.  (ECF No. 36 at Pd ID 576-78 (citing *Snow v. Atofina Chemicals, Inc.*, No. 01-72648, 2006 WL 1008002, at *6 (E.D. Mich. Mar. 31, 2006) (finding that a class definition containing the language parties "having claims for damages and injuries" was overly broad); *Eversole v. EMC Mortg. Corp., No. CIV.A. 05-124-KSF*, 2007 WL 1558512, at *6 (E.D. Ky. May 29, 2007) (holding that class was not sufficiently numerous and overly broad in that it 'includes persons who have not been, and will not be, harmed by Defendant.''').)  Plaintiffs do not allege generalities or future harm in its definition.  The cases cited by Wayne do not demonstrate that Plaintiffs have failed to meet a minimum standard of definiteness as the harm is directly stated to have come from auction sale without just compensation in Wayne and Oakland counties and it does not include individuals who have not been harmed by Defendants.

## B.    Commonality

The commonality requirement of Rule 23(a)(2) "simply requires a common question of law or fact."  *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997).  As the Sixth Circuit explained: "The interests and claims of the various plaintiffs need not be identical.  Rather, the commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the

putative class members." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998) (quoting *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993)).  Even if there is an individualized determination as to amounts owed to former property owners in surplus proceeds, the "mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1998); *see also Hill v. Snyder*, 308 F. Supp. 3d 893, 914 (E.D. Mich. 2018) (finding commonality among class members challenging state's statutory scheme barring them from parole eligibility "[r]egardless of individual factors regarding a prisoner's likelihood of parole").

The Wayne and Oakland former property owners whose properties sold at tax auction and did not receive the surplus proceeds are suffering from the same injury, that is a taking without just compensation.  Wayne argues that there are too many factual distinctions among the properties.  (ECF No. 36 at Pg ID 580.)  In response Plaintiffs argue "the class members 'may have different damages' but 'they all share the same question of law, specifically whether Defendants engaged in a taking when they retained the surplus funds from the sale of Plaintiffs' properties.'"  (ECF No. 39 at Pg ID 625 (citing *Arkona*, 2020 WL 4366027 at 5.).)

The Court finds that there is commonality of injury from the unconstitutional taking without just compensation.

### C.    Typicality

"A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if [the named plaintiff's] claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082).  The typicality requirement of Rule 23(a)(3) demands that the representative be a member of the class and share at least a common element of fact or law with the class.  *Senter*, 532 F.2d at 525.  Like the test for commonality, the test for typicality is not demanding and the interests and claims of the various plaintiffs need not be identical.  *Bittinger*, 123 F.3d at 884.  The Sixth Circuit has explained the typicality requirement as follows:

> "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.  In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff.  Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (quoting 1 *Newberg*, *supra*, § 3-13, at 3-76).  A representative's claim remains typical, then, even where the evidence relevant to his or her claim varies from other class members, some class members are subject to different defenses, and the members suffer varying levels of injury.  *See Bittinger*, 123 F.3d at 884-85.  Wayne argues that Bowles, as one of the named party representatives, has a claim which is not typical of the class.  (ECF No. 36 at Pg ID 579.)  As discussed, the post-foreclosure judgment conveyance to Joshua Bowles, was of no consequence.  Oakland argues that Taylor cannot meet the standard of typicality because his claims are time barred.  (ECF No. 35 at Pg ID 554.)  In applying the statute of limitations analysis, Taylor is not time-barred from asserting his claims.[13]  The Court finds that the typicality requirement is met with Bowles' and Taylor's claims of an unconstitutional taking being typical of the proposed class.

### D.    Adequacy of Representation

The Sixth Circuit has identified two criteria relevant to deciding whether the named plaintiff "will fairly and adequately protect the interests of the class," Fed.

---

[13] Taylor's Midland Blvd. Property sold at auction on August 14, 2017, while his North Alexander Property sold at auction on July 26, 2017.  As such Taylor had until July 26, 2020, to file this lawsuit.  However as previously discussed, due to the emergency orders from the Michigan Supreme Court, Taylor had an additional 101 days to initiate this lawsuit.  The lawsuit was filed on October 22, 2020, as such, his claims are not time-barred.

R. Civ. P. 23(a)(4): "(1) the representative must have common interests with unnamed members of the class and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083 (internal quotations and citations omitted).

Oakland argues that Taylor cannot meet the standard of typicality and adequacy because his claims are time barred. (ECF No. 35 at Pg ID 554.) The Court has addressed this argument in its threshold issues on the motion to dismiss. Wayne argues that Plaintiff Bowles cannot satisfy the typicality requirement and is not an adequate representative of the putative class because she had no ownership interest due to her subsequent conveyance of the deed following tax foreclosure. (ECF No. 35 at Pg ID 554; ECF No. 36 at Pg ID 581-82.) As this issue was similarly discussed in the threshold issues on the motion to dismiss, the Court finds Wayne's argument unconvincing. The claims are typical here where the same event, tax foreclosure sale with the retention of surplus proceeds, gives rise to the claims of each putative class member. Plaintiffs also adequately represent the class as they have a common interest with the members of the proposed class in their claims of just compensation. For these reasons, the Court concludes that the four requirements of Rule 23(a) are satisfied.

**II.     Rule 23(b)**

In addition to satisfying the requirements of Rule 23(a), a party seeking class certification must show "that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3) (emphasis added). Thus, Rule 23(b)(3) class actions require predominance and superiority. Further, "[t]he interests of the members of a class must be connected closely because all members of a Rule 23(b)(3) class who do not opt out will be bound by the judgment. *Smith v. ComputerTraining.com, Inc.*, No. 2:10-CV-11490, 2011 WL 308992, at *6 (E.D. Mich. Jan. 27, 2011) (citing Fed. R. Civ. P. 23(c)(3)(b)).

## A.    Predominance

"To evaluate predominance, "[a] court must first characterize the issues in the case as common or individual and then weigh which predominate." *Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405, 413 (6th Cir. 2018). The Supreme Court explained,

> When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citations and internal quotation marks omitted). However, in cases where numerous individual issues

40

relevant to each particular plaintiff predominate, the predominance factor cannot be satisfied.  *See In re Am. Med. Sys., Inc.*, 75 F.3d at 1085 (holding in a products liability class action that each plaintiff's unique complaint and medical treatment plan as it relates to alleged injury from penile prostheses could not establish predominance under rule 23(b)(3)).

Wayne argues "[a]ny perceived commonality among putative class members is mooted by the need for individual determinations regarding (i) each proposed class member's interest in the relevant property when auctioned, (ii) all lienholders or other parties with interests in each property, and (iii) the sale amount or "value" of the relevant property at the time of foreclosure and sale."  (ECF No. 36 at Pg ID 583.)  The Court finds that *Rafaeli* decided that here each class members' interest would be the same, that is, if an auction sale occurred in which there were surplus proceeds, putative class members have an interest in the return of those proceeds. See *Fox*, 2020 WL 6118487, at *10 (explaining regarding predominance, that "[w]hether [d]efendants unlawfully retained surplus proceeds is a specific legal question that is subject to generalized proof by all members of the putative class.")

The other issues raised go to the computation of damages and do not diminish the predominance of the common issue of an unconstitutional taking.  *See Smith*, 2011 WL 308992, at *6.  In *Smith*, following the abrupt closing of a computer training program, plaintiffs filed a class action generally on behalf of

individuals who had been enrolled at the school, had graduated from the school, paid tuition, or who had been guaranteed career placement.  *Id*. at 1.  The court reviewed a motion to certify the class as a "Graduate Class" and "Enrolled Class". *Id*. at 1.  The Court found that the common question affecting both classes "was what damages [d]efendants caused through their representations and through events surrounding the closing of the schools."  *Id*. at 7.  The *Smith* court concluded that Plaintiffs were able to satisfy all of the Rule 23(a) and provisions of Rule 23(b)(3).  *Id*. at 8.  Similarly here, Plaintiffs and the putative class were all injured by an unconstitutional taking and the issue of damages is the only individualized issue remaining.  *See also Fox*, 2020 WL 6118487, at *8 (citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 854 (6th Cir. 2013) (noting that counties were ultimately concerned with a dissimilarity in damages, rather than legal questions.)  As such, the Court finds that the parties have demonstrated that the questions of law or fact common to class members predominate over any question affecting individual members.

## B.   Superiority

The superiority requirement "asks whether a 'class action is superior to other available methods for fairly and efficiently adjudicating the controversy . . . . [and] aims to 'achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing

procedural fairness or bringing about other undesirable results.'"  *Martin,* 896

F.3d at 415 (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).

Wayne argues that "[t]he Michigan Legislature is the appropriate body to

determine the remedy here and it has done so, by unanimously passing

amendments to the [GPTA]…."  (ECF No. 36 at Pg. ID 584.)  In response,

Plaintiffs argue that this method is inferior.  (ECF No. 39 at Pg ID 627.)  The *Fox*

court in a decision decided before the effective date of the GPTA amendments

states that "the remedies being proposed are plainly inferior to a class action …" as

they would "preclude recovery of surplus proceeds resulting from foreclosures

beyond the preceding two-year statutory period."  *Fox*, 2020 WL 6118487, at *11.

The Court agrees and notes that the amendments to the GPTA, at this time, exclude

Plaintiffs from the procedure of §211.78(t).  The Court therefore finds that

Plaintiffs have satisfied the Rule 23(b)(3) requirements for predominance and

superiority.

### III.    Conclusion

For the reasons set forth above, the Court holds that Plaintiffs satisfy all of

the prerequisites for class certification under Rule 23(a) and (b)(3).  However,

"[t]he Court is not bound by Plaintiffs' [class] description.  It has 'broad discretion

to modify class definitions.'"  *Dearduff v. Washington*, 330 F.R.D. 452, 460 (E.D.

Mich. 2019) (citing *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619

(6th Cir. 2007)). The proposed class definition in Plaintiffs' motion to certify

states "during the relevant statutory period."[14] (ECF No. 33 at Pg ID 476.)

Further, the Court notes that statutory period as defined in Plaintiffs Amended

Complaint, in the class allegation section, states that the action is brought on behalf

of individuals within the statutorily limited time period. (Am. Compl. ¶ 60, Pg ID

175-76.) As discussed infra, the statute of limitations is three years from the time

of the sale. Accordingly, the class is certified as follows:

> All property owners formerly owning property from within the
> counties of Wayne and Oakland who had said property seized
> by Defendants via the General Property Tax Act, MCL 211.78
> et seq., which was worth more and/or was sold at tax auction
> for more than the total tax delinquency and was not refunded
> the excess/surplus equity, and this sale occurred before July 17,
> 2020, but within three years of the filing of this lawsuit, and
> excluding any property owner who has filed their own post-
> forfeiture civil lawsuit to obtain such relief.

Under Federal Rule of Civil Procedure 23(g), a court that certifies a class

must appoint class counsel." In doing so, the court must consider the following:

> (i) the work counsel has done in identifying or investigating
> potential claims in the action;
> (ii) counsel's experience in handling class actions, other
> complex litigation, and the types of claims asserted in the
> action;
> (iii) counsel's knowledge of the applicable law; and

---

[14] The court in *Arkona* limited the class period to claims since January 1, 2013,
however, the court in *Fox* certified the class using the language "during the
relevant time period". (*See Fox v. Cty. of Saginaw*, 2020 WL 6118487 at 4;
*Arkona*, 2020 WL 4366027 at 2).

> > (iv) the resources that counsel will commit to representing the
> > class.

Fed. R. Civ. P. 23(g)(1)(A).  Plaintiffs request that David Shea, Aaron Cox, Mark

Wasvary, Phillip Ellison, and Matthew Gronda be appointed as class counsel.

(ECF No. 33 at PG ID 488-89.)  The Court finding the requirements of Rule 23(g)

met, designates the requested as class counsel.  The determination of class

certification is conditional until final judgment.  *See* Fed. R. Civ. P. 23 (c)(1)(C).

Accordingly,

**IT IS ORDERED** that Defendants' Motions to Dismiss (ECF Nos. 24, 25)

are **GRANTED IN PART** and **DENIED IN PART** in that Plaintiffs' claims

against Defendant Andrew Meisner are **DISMISSED WITH PREJUDICE** and he

is **DISMISSED AS A PARTY**, and Counts II, IV and V are **DISMISSED WITH**

**PREJUDICE**;

**IT IS FURTHER ORDERED** that Plaintiffs' claims of a Fifth Amendment

Taking and state law inverse condemnation (Counts I and III) survive, and Eric

Sabree shall remain a named party in his official capacity;

**IT IS FURTHER ORDERED** that Plaintiffs' motion for class certification

(ECF No. 33) is **GRANTED**.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: January 14, 2022