# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

TONYA BOWLES, for herself
and all those similarly situated,

                        Plaintiff,

    and

BRUCE TAYLOR, for himself
and all those similarly situated,

                        Plaintiffs,

    v.

COUNTY OF WAYNE by its BOARD
OF COMMISSIONERS also sometimes
known as CHARTER COUNTY
OF WAYNE by its BOARD OF
COMMISSIONERS, ERIC R. SABREE,
in his official and personal capacity,
COUNTY OF OAKLAND by its
BOARD OF COMMISSIONERS, and
ANDREW MEISNER, in his official and
personal capacity,

                        Defendants.

Case No. 20-cv-12838
Hon. Linda V. Parker

---

## PLAINTIFF BRUCE TAYLOR'S AND OAKLAND COUNTY'S JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

---

NOW COMES Plaintiff Bruce Taylor and Defendant Oakland County and

for their Joint Motion pursuant to Federal Rules of Civil Procedure 23 request that

1

this Honorable Court grant preliminary approval to their class action settlement for

the reasons set forth in the parties' Brief in Support of this Motion.

      **WHEREFORE,** the parties request that the Court preliminarily approve

the settlement and enter the proposed Preliminary Approval Order.

 

**The Law Offices of Aaron D. Cox, PLLC**

By: /s/ Aaron D. Cox
     **AARON D. COX** (P69346)
     Co-Counsel for Plaintiffs
     The Law Offices of Aaron D. Cox, PLLC
     23820 Eureka Rd.
     Taylor, Michigan 48180
     (734) 287-3664
     aaron@aaroncoxlaw.com

**Giarmarco, Mullins & Horton, P.C.**

By: /s/ William H. Horton
     **WILLIAM H. HORTON** (P31567)
     Attorney for Defendants Oakland
     County and Andrew E. Meisner
     101 West Big Beaver Road, Tenth Floor
     Troy, Michigan  48084-5280
     (248) 457-7000
     bhorton@gmhlaw.com

Date: July 26, 2022

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

TONYA BOWLES, for herself
and all those similarly situated,

        Plaintiff,

    and

BRUCE TAYLOR, for himself
and all those similarly situated,

        Plaintiffs,

    v.

COUNTY OF WAYNE by its BOARD
OF COMMISSIONERS also sometimes
known as CHARTER COUNTY
OF WAYNE by its BOARD OF
COMMISSIONERS, ERIC R. SABREE,
in his official and personal capacity,
COUNTY OF OAKLAND by its
BOARD OF COMMISSIONERS, and
ANDREW MEISNER, in his official and
personal capacity,

        Defendants

Case No. 20-cv-12838
Hon. Linda V. Parker

---

**BRIEF IN SUPPORT OF PLAINTIFF BRUCE TAYLOR'S AND
OAKLAND COUNTY'S  JOINT MOTION FOR PRELIMINARY
<u>APPROVAL OF SETTLEMENT</u>**

# TABLE OF CONTENTS

Page

INDEX OF AUTHORITIES.......................................................................... iii

INTRODUCTION .....................................................................................1

STATEMENT OF THE CASE.....................................................................1

FUNDAMENTAL TERMS OF THE PROPOSED SETTLEMENT ......................5

LEGAL ARGUMENT...............................................................................8

RELIEF REQUESTED..............................................................................21

# INDEX OF AUTHORITIES

Page

**Cases**

*Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625-26 (1997). ......................11

*Armstrong v. Board of School Directors of the City of Milwaukee,*
616 F.2d 305, 314 (7th Cir. 1980)..........................................................15

*Bacon v. Honda of America Manufacturing, Inc.,* 370 F.3d 565, 570 (6th Cir. 2004)
...............................................................................................................9

*Bailey v. Great Lakes Canning, Inc.* 908 F.2d 38, 42 (6th Cir. 1990).............. 13, 14

*Ball v. Union Carbide Corp.,* 376 F.3d 554 (6th Cir. 2004)...................................10

*Califano v. Yamaski,* 442 U.S. 682, 701 (1979). ......................................................9

*Clark Equipment Co. v. International Union of Allied Industrial Workers of
America,*
803 F.2d 878, 880 (6th Cir. 1986)..........................................................14

*Detroit v. Grinnell Corp.,* 495 F.2d 448, 456 (2d Cir. 1974) .................................14

*Fisher Bros. v. Cambridge-Lee Indus., Inc.,* 630 F. Supp. 482, 488-89 (E.D. Pa.
1985);.....................................................................................................14

*General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157-58 (1982) ......11

*Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975). .................................................19

*Granada Investments, Inc. v. DWG Corp.* 962 F.2d 1203, 1205 (6th Cir. 1992).....13

*Hansberry v. Lee,* 311 U.S. 32 (1940). ...................................................................11

*Hart v. City of Detroit,* 331 N.W. 2d 438, 445 (Mich. 1982)...................................7

*In re American Medical Systems Inc.,* 75 F3d 1069, 1079 (6th Cir. 1996). .. 9, 10, 11

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*
55 F.3d 768, 784 (3d Cir. 1995):............................................................13

*In re McDonnell Douglas Equip. Leasing Sec. Litig.,*
838 F. Supp. 729, 738-39 (S.D.N.Y. 1993) ...........................................14

*In re Warner Commc'ns Sec. Litig.,* 618 F. Supp. 735, 741 (S.D.N.Y. 1985),
*aff'd,* 798 F.2d 35 (2d Cir. 1986);.........................................................19

*Newman v. Stein,* 464 F.2d 689 (2d Cir. 1972).......................................................13

*Palakurthi v. Wayne County* 2022 WL 943032 *6 (E.D. Mich., January 14, 2022).7

*Rafaeli v. Oakland County,* 505 Mich. 429 at 479 (2020)....................................1, 2

*Rafaeli,* 2015 WL 13859576 (Mich. Cir. Ct. Oct. 8, 2015).......................................2

*Rafaeli, LLC v. Oakland Cty.,* No 330696, 2017 WL 4803570 at *1 (Mich. Ct. of
App. Oct. 24, 2017). ...............................................................................2

*Senter v. General Motors Corp.,* 532 F.2d 511 (6th Cir. 1976) ..............................11

*Sprague v. General Motors Corporation,* 133 F.3d 388 (6th Cir. 1998). .................8

**Other Authorities**

2 Herbert Newberg & Alba Conte, *Newberg on Class Actions*
   § 11.41 at 11-88 (3d ed. 1992) ........................................................ 13, 14

**Rules**

Fed. R. Civ. P. 23 ....................................................................................8
Fed. R. Civ. P. 23(a)(1) ...........................................................................9
Fed. R. Civ. P. 23(a)(3) .........................................................................10
Fed. R. Civ. P. 23(a)(4) .........................................................................11
Fed. R. Civ. P. 23(b)(3) ................................................................... 11, 12
Fed. R. Civ. P.23(e) ...............................................................................13

**INTRODUCTION**

Plaintiff Bruce Taylor and Defendant County of Oakland request the Court for preliminarily approval of their proposed settlement.  The parties are separately filing a motion to approve the notice plan and to appoint a claims administrator. The proposed settlement is in regard to Defendant Oakland County only.  The Wayne County Defendants are not part of the proposed settlement.

Plaintiff Bruce Taylor and his counsel have already been certified as Class Representative and Class Counsel.  (ECF No. 47 PageID. 683-728).  Plaintiffs seek to add Andre Ohanessian and Home Opportunity, LLC as Class Representatives and revise the class period to account for proceedings which have been on-going in Michigan courts since 2015.

The proposed order, which is attached as Exhibit A, complies with the Settlement Agreement executed by the parties.  The Settlement Agreement is attached hereto as Exhibit B.

**STATEMENT OF THE CASE**

This case arises out of the case of *Rafaeli, LLC, et. al. v. Oakland County*, which was filed in Oakland County Circuit Court in 2015 as a putative class action. That case alleged the plaintiffs' properties were sold at tax auction for amounts in excess of taxes due to the County and the County retained the surplus proceeds.  The Oakland County Circuit Court granted summary disposition in favor of Defendants,

holding that the Oakland County Defendants did not unconstitutionally take the properties because plaintiffs forfeited all interests they held in the properties when they failed to pay their property taxes. *Rafaeli*, 2015 WL 13859576 (Mich. Cir. Ct. Oct. 8, 2015). The Michigan Court of Appeals affirmed. *Rafaeli, LLC v. Oakland Cty.*, No 330696, 2017 WL 4803570 at *1 (Mich. Ct. of App. Oct. 24, 2017).

The Michigan Supreme Court granted leave and, on July 17, 2020, reversed the circuit court. The Court held Michigan's General Property Tax Act, which does not provide for the return of surplus proceeds from the tax foreclosure sale, results in an unconstitutional taking under the Michigan Constitution. *Rafaeli v. Oakland County*, 505 Mich. 429, 479 (2020). The Court remanded the case for proceedings consistent with its opinion. *Id*. at 485.

Upon remand, the parties stipulated to, and the court granted, class certification and named class counsel (who are the same class counsel as this case). The class period began on June 8, 2009, since the case was filed in 2015 and the limitations period for a taking in Michigan is six years. Although the class was certified, no notice was provided because Oakland County filed a motion for summary disposition on the basis that the Michigan Supreme Court decision should only be applied prospectively.

Home Opportunity, LLC was also added as an intervening party plaintiff at this time and added a Fifth Amendment takings claim. Also, the claim involving

2

plaintiff Rafaeli, LLC was settled and that plaintiff was dismissed. So, plaintiffs Ohanessian and Home Opportunity remain as the class representatives in that matter.

The parties briefed and argued the motion that the Michigan Supreme Court decision should apply only prospectively as of July 17, 2020. Ultimately, the Circuit Court agreed with Oakland County and held the Michigan Supreme Court ruling is prospective only and dismissed the case. That decision was timely appealed and is currently pending in the Michigan Court of Appeals, being Docket No. 358152.

This case began when Plaintiff Tonya Bowles filed a Class Action Complaint against the County of Wayne and its Treasurer Eric R. Sabree on October 22, 2020. (ECF No.1 PageID. 1-23). An Amended Complaint was filed on December 28, 2020 adding Bruce Taylor as a Plaintiff and County of Oakland and its Treasurer Andrew Meisner as Defendants. (ECF No. 15 PageID. 135-160). A Corrected First Amended Complaint was filed on December 29, 2020. (ECF No. 17 PageID. 163-190). Defendant Andrew Meisner has since been dismissed from the lawsuit. (ECF No. 47 PageID. 683-728).

In the Amended Complaint, Bruce Taylor alleges a taking of real property by Oakland County without just compensation in violation of the 5th and 14th Amendments of the Constitution, as well as a state cause of action for inverse

condemnation.[1]  Taylor's causes of action arise as the former owner of 1401 Midland Blvd., Royal Oak and 3916 North Alexander Ave., Royal Oak.  On or about February 8, 2017, Oakland County foreclosed on both properties for the nonpayment of taxes. Subsequently, on or around July 26, 2017, Oakland County sold the North Alexander property at a tax auction for $162,500.  On or around August 14, 2017, Oakland County sold the Midland Blvd. property at a tax auction to for $190,000.  The sales prices for both properties exceeded the taxes owed to the County.  (Corrected First Am. Compl. ECF No. 17, PageID. 170, para. 30-33; PageID. 172, para. 41-44).

Since the Amended Complaint was filed, Plaintiffs have engaged in informal discovery to determine, among other things:

1. The risks and uncertainty of litigation, especially in complex actions such as this lawsuit, as well as the difficulties and delays inherent in such litigation;

2. The likelihood of appeals, even if Plaintiffs prevailed in a class-wide basis;

3. The substantial benefits to the Plaintiffs and the Settlement Class under the terms of the Settlement Agreement; and,

4. The desirability of consummating the Settlement Agreement promptly, in order to provide effective relief to Plaintiffs and the Settlement Class.

Plaintiffs and Plaintiffs' counsel agree that the Settlement Agreement is fair, reasonable, and adequate because it provides for immediate monetary relief for

---

[1] Count II for claims directly under the 5th Amendment was dismissed.  Counts IV (deemed duplicative of Count III) and V (8th Amendment claims) were also dismissed.  (ECF No. 47 PageID. 683-728).

alleged past constitutional violations and is in the best interest of the Settlement Class, resolves fairly the claims alleged in the lawsuit, and avoids the considerable risks and delays of further litigation.

The parties have discussed the merits of the case, the defenses of the claims, and the possibility of a class-wide resolution of the case without the need for further litigation. Since 2015, the parties have engaged in multiple negotiation sessions at the courthouse, in person, and via telephone. The negotiations, conducted on behalf of the parties by experienced counsel, were vigorous in nature and were at all times conducted at arm's length.  Finally, after a two-day mediation on April 11 and April 12, 2022 with a retired judge with experience in class actions, the parties were able to come to an agreement on the basic terms of the settlement.  Those terms have subsequently been specified in the Settlement Agreement.

## **FUNDAMENTAL TERMS OF THE PROPOSED SETTLEMENT**

The parties have agreed that Oakland County will establish a common benefit settlement fund in the amount of $38,000,000 ("the fund") which will be used to pay the claims of the Settlement Class members who make valid claims.  Plaintiffs seek to expand the Settlement Class to encompass the claims which were preserved in the Michigan *Rafaeli* case:

> All real property owners formerly owning real property
> within the County of Oakland who had their real property
> foreclosed for non-payment of taxes pursuant to the

> Michigan General Property Tax Act, MCL 211.78, et seq., which was sold at tax auction for more than the amount owed in unpaid taxes, interest, penalties and fees and were not refunded the surplus amount. The period at issue is June 8, 2009 through June 30, 2022. Any former property owner who has filed their own post-foreclosure civil lawsuit which has become final or has otherwise settled with Oakland County is excluded.

The fund will be distributed as follows. First, the fees, actual out-of-pocket expenses and an incentive fee for the Class Representatives will be paid. [2] Then, the valid claims of Class Members will be paid. If the total face value of the claims is less than the balance of the fund after fees and expenses, then valid claims will be paid in full. If the face value of the claims exceeds the balance of the fund, all claims are reduced pro rata. If there is any money left in the fund after those payments, it shall be used as follows:

A. Any balance of the fund may be used by the County to settle/pay person(s) who opt out from the class-wide settlement.

B. If there is any balance in the fund thereafter, up to $3,000,000 shall be returned to the County.

C. If there is a balance in the fund thereafter which exceeds $150,000, valid Class claimants are entitled to payment of interest at the Michigan statutory interest rate on a pro-rata basis.

D. If there is any balance in the fund, up to $250,000 will be paid to Oakland Livingston Human Services Agency, a non-profit organization that offers free advice and legal assistance to property owners facing tax foreclosure.

---

[2] The actual costs may include all costs related to the instant lawsuit, as well as costs related to prosecution of claims on behalf of the *Rafaeli* and *Home Opportunity* litigation.

E.  Any remaining balance of the fund will be returned to Oakland County. The County will pay the cost of the third-party claims administrator separate from the fund.

The proposed class definition is similar to the definition in this Court's Order dated January 14, 2022, (ECF No. 47 PageID. 726).  The differences are:

1. The period is extended back to June 8, 2009 (to include the Michigan *Rafaeli* potential claimants)..

2. The Court's class definition excludes "any property owner who has filed their own post-forfeiture civil lawsuit to obtain such relief."  ECF No. 47 Page ID.726.  The parties' class definition expands the Class to exclude only those who have previously settled with Oakland County and those who have filed a post-forfeiture lawsuit that has become final.

In support of the proposed class period, the parties offer that *Rafaeli* was originally filed on June 8, 2015.  The filing of the *Rafaeli* case tolled the limitations period as to all putative class members.  MCR 3.501(F)(1).  The Michigan limitations period for inverse condemnation is six years.  *Hart v. City of Detroit*, 331 N.W. 2d 438, 445 (Mich. 1982).  *See also Palakurthi v. Wayne County* 2022 WL 943032 *6 (E.D. Mich., January 14, 2022).  Additionally, a plaintiff may rely upon "tolling based on the pendency of putative class actions where he would have been a member of the class." *Id*.  Plaintiff Bruce Taylor relies upon the pendency of the

7

*Rafaeli* putative class action against Oakland County as he would have been a member of that class.

Defendant has denied liability to the Plaintiffs and the Settlement Class and believes that it has a complete defense to Plaintiffs' claims. Defendant does not object to the request for Preliminary Approval solely for settlement purposes. If the settlement is not finally approved as provided in the Settlement Agreement, the parties agree that the Settlement Agreement will not become effective, will be set aside and neither this Motion nor the Settlement Agreement will in any way prejudice Defendant's right to contest the merits of Plaintiffs' claim on any legal or equitable grounds.

## IV.   <u>LEGAL ARGUMENT</u>

### A.   <u>THIS CASE MEETS THE REQUIREMENTS OF RULE 23</u>

Federal Rule of Civil Procedure 23 sets forth the criteria for certifying an action as a class action. In order for a class to be certified, a class must satisfy all of the requirements of Rules 23(a) and, in addition, satisfy at least one of the subdivisions of Rule 23(b). *Sprague v. General Motors Corporation,* 133 F.3d 388 (6th Cir. 1998). Rule 23(a) establishes "Prerequisites" for a class action:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are
typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately
protect the interests of the class.

### 1.   **Numerosity**

The Settlement Class must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). There is no automatic cut-off point at which the number of plaintiffs makes joinder impractical, thereby making a class-action suit the only viable alternative. *In re American Medical Systems Inc.,* 75 F3d 1069, 1079 (6th Cir. 1996). However, the sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1). *Bacon v. Honda of America Manufacturing, Inc.,* 370 F.3d 565, 570 (6th Cir. 2004). Here, the class consists of about 2100 members. In addition, the Court has already determined that numerosity has been satisfied. (ECF No. 47, PageID. 716).

### 2.   **Commonality**

For purposes of certifying a class, the commonality requirement is interdependent with the impracticality of joinder requirement, and the tests together form the underlying conceptual basis supporting class actions. *In re American Medical Systems, Inc.,* 75 F.3d at 1080 (6th Cir. 1996). Class relief is peculiarly

appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class. *Califano v. Yamaski,* 442 U.S. 682, 701 (1979). The commonality test is qualitative rather than quantitative, that is, there need only be a single issue common to all members of the class. *In re American Medical Systems, Inc.,* 75 F.3d at 1080.

This Court has already determined that Bruce Taylor's claims meet the commonality test finding that "there is commonality of injury from the unconstitutional taking." (ECF No. 47, PageID. 718-719). Plaintiffs submit that Plaintiffs Ohanessian and Home Opportunity also meet the commonality test. They also did not receive a refund of surplus proceeds after their properties were sold at auction.

### 3.   <u>Typicality</u>

Under Rule 23(a)(3), the commonality and typicality requirements tend to merge. *Ball v. Union Carbide Corp.,* 376 F.3d 554 (6th Cir. 2004). For purposes of certifying a class for a class action, "typicality" determines whether a sufficient relationship exists between the injury to the named Plaintiffs and the conduct affecting the class, so that the Court may properly attribute a collective nature to the challenged conduct. *In re American Medical Systems, Inc.,* 75 F.3d at 1082. Thus, a plaintiffs' claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or her

10

claims are based on the same legal theory. *Id*.

This Court has determined that typicality has been satisfied as to Bruce Taylor.   There is no reason to doubt that the claims of Ohanessian and Home Opportunity, both having suffered the same damages as Taylor, are typical to the class.

### 4.   **Adequacy of Representation**

Fed. R. Civ. P. 23(a)(4) requires that the plaintiffs, as representative parties, "will fairly and adequately protect the interests of the class."   This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members. *Hansberry v. Lee,* 311 U.S. 32 (1940). The adequacy inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent. *See General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157-58 (1982).   A class representative must be part of the class and possess the same interest and suffer the same injury as the class members. *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625-26 (1997).[3]

---

[3] The two criteria for determining adequacy of representation are: (1) the representative(s) must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.  *Senter v. General Motors Corp.,* 532 F.2d 511 (6th Cir. 1976). The adequate representation requirement overlaps with the typicality requirement because, in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members. *In re American Medical Systems, Inc.,* 75 F.3d at 1083.

It has previously been determined that Bruce Taylor and his counsel will adequately represent the Class.  (ECF No. 47, PageID. 720-721).

### The Proposed Class Also Satisfies the Requirements of Rule 23(b)(3)

Class certification also requires the class representatives to show that they can satisfy one of the alternative requirements of Rule 23(b).  Here, the Plaintiffs assert that it meets the requirements for certification under Rule 23(b)(3).  In order for a matter to be certified under Rule 23(b)(3), it is necessary that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

This Court has already determined that the predominance test is satisfied. (ECF No. 47, PageID. 724).  The claims of named Plaintiffs are identical, differing only in the calculation of damages.  Thus, a single adjudication resolves the claims of Plaintiffs, as well as the claims of the Class.

In addition, for certification under Rule 23(b)(3), the Court must find that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Rule 23(b)(3) sets forth four factors for the Court to consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (3) the desirability or undesirability of concentrating the litigation of the

12

claims in a particular forum; and (4) the difficulties likely to be encountered in the management of a class action.  Superiority has also been satisfied in this matter. (ECF No. 47, PageID. 725).

**B.    THE SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL**

**1.    Standards Applicable to this Court's Consideration of the Proposed Settlement**

Federal Rule of Civil Procedure 23(e) provides that a class action may not be compromised or settled without approval of the court.  A district court should approve a settlement if it is "fundamentally fair, adequate and reasonable" in light of the circumstances of the case.  *Bailey v. Great Lakes Canning, Inc.* 908 F.2d 38, 42 (6th Cir. 1990).  Factors relevant to determining whether a proposed settlement is fair, adequate and reasonable include "the likelihood of success on the merits, the risk associated with and the expense and complexity of litigation, and the objections raised by class members.  *Granada Investments, Inc. v. DWG Corp.* 962 F.2d 1203, 1205 (6th Cir. 1992).

Courts generally favor the settlement of lawsuits because settlements replace the expense and uncertainties of trial with a mutually agreeable outcome.  *Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972).  There is an overriding public interest in settling litigation and avoiding trials, especially in class action suits.[4]

---

[4] As the Third Circuit explained in *In re Gen. Motors Corp. Pick-up Truck Fuel Tank*

As a rule, approval of a proposed settlement is committed to the sound discretion of the trial court and the order approving a settlement will not be disturbed absent an abuse of discretion.  *Bailey v. Great Lakes Canning, Inc.* 908 F.2d at 42 (6th Cir. 1990).   In considering a potential settlement for preliminary approval purposes, the trial court does not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute and need not engage in a trial on the merits. *Detroit v. Grinnell Corp.,* 495 F.2d 448, 456 (2d Cir. 1974). The district court's role in reviewing settlements "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equipment Co. v. International Union of Allied Industrial Workers of America,* 803 F.2d 878, 880 (6th Cir. 1986), *cert denied sub nom Jones v. Clark Equipment Co.,* 480 U.S. 934 (1987).   The proposed settlement reached in this case is fair and reasonable because it is the result of extensive arm's length negotiations conducted by competent counsel with experience in class actions.[5]

---

*Prods. Liab. Litig.* 55 F.3d 768, 784 (3d Cir. 1995): "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *See* 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 at 11-88 (3d ed. 1992) (citing cases).

[5] *Fisher Bros. v. Cambridge-Lee Indus., Inc.,* 630 F. Supp. 482, 488-89 (E.D. Pa.

Courts primarily consider the strength of the case for the Plaintiffs on the merits, balanced against the amount offered in the settlement. *Armstrong v. Board of School Directors of the City of Milwaukee,* 616 F.2d 305, 314 (7th Cir. 1980). In addition, they consider: the complexity, expense and length of further litigation; the amount of opposition to the settlement; the presence of collusion in reaching a settlement; the reaction of members of the class to the settlement; the opinion of competent counsel; and the stage of proceedings and the amount of discovery completed.

Here, the proposed settlement is a fair, reasonable, and adequate settlement of the class action claims. A fund of $38,000,000 will be created, which represents approximately 80% of total possible damages.[6] All Class Members will be able to make a claim to recoup money. It is believed Class claimants have a likelihood of receiving 100% of their surplus. If there is money left over after other deductions, the Class members may get additional money for interest on their damages. The

---

1985); *In re McDonnell Douglas Equip. Leasing Sec. Litig.,* 838 F. Supp. 729, 738-39 (S.D.N.Y. 1993) ("courts have consistently refused to substitute their business judgment for that of counsel, absent evidence of fraud or overreaching"); 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 at 11-88 (3d ed.1992) ("[t]here is usually a presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.").

[6] As part of the settlement, Oakland County will affirm there was approximately $47,847,000 in total surplus funds during the proposed class period.

settlement achieves an excellent result without the risks, costs, and delays of sustained litigation and the inevitable post-decision appeal. In looking at the specific reasons, this Court should conclude that the settlement warrants this Court's approval.

### (a)     The Risk of Establishing Liability

No case is risk-free, and this case is no exception. While Plaintiffs believe that their claims have substantial merit, establishing liability against Defendant is not a foregone conclusion. Defendant has asserted the *Rafaeli* decision is prospective only and, at least in one court, has been successful. The parties believe the question of *Rafaeli's* retroactivity will ultimately be decided by the Michigan Supreme Court.

While Plaintiffs were confident of the legal sufficiency of their allegations, these issues could not have been resolved without extensive briefing and argument, and the outcome was uncertain. Defendant has consistently and emphatically denied any liability to Plaintiffs. Plaintiffs have disputed this contention.

There are colorable arguments on both sides and conflicting judicial opinions on the question. There is no clear answer as to how the Michigan Supreme Court would ultimately decide. Each side has considerable risk. Moreover, resolution of these issues and the likelihood of appeals if the Plaintiffs prevailed would have contributed to unacceptable delay which would have diminished the ultimate value of any recovery for the Settlement Class. In light of all of the circumstances,

16

establishing liability is by no means certain and a settlement is preferable when compared to the risks of proceeding forward with the litigation.

### (b)   Reasonableness of the Class Recovery

Given the uncertainties attendant to this litigation, the resolution of the litigation represents a substantial recovery for the Settlement Class in light of the best possible recovery. Defendant has agreed to establish a common benefit fund in the amount of $38,000,000, representing 80% of the total damage pool possible.

The Settlement Class will be compensated by making a claim through a Claims Administrator. The Claims Administrator can verify any valid claims via Defendant's records. Settlement Class members are to mail their claims to the Claims Administrator.

Following preliminary approval, the Claims Administrator will cause the Class notice to be sent by first class mail to all Class members for whom Defendant has mailing addresses.

The notice process and claim forms, addressed in a separate motion, are more than sufficient to comply with the due process requirements in providing notice to the Settlement Class. The Class notice clearly describes the terms of the settlement, how the member may make a claim from the common fund and how the member may object to or exclude itself from the settlement. The Class notice further provides that the Settlement Class members who do not timely exclude themselves from the

17

Settlement Class shall be deemed to have assented to inclusion in the Settlement Class and release the Defendant from all liability under the terms of the Settlement Agreement.

### (c)    All the Attendant Risks of Litigation

Essentially, this factor is an amalgam of the analysis described above. When the risks of liability are considered in the light of the immediate, concrete and substantial benefits offered to the Settlement Class, this settlement is an excellent result for the Settlement Class.

### (d)    The Complexity, Expense, and Likely Duration of Further Litigation

An important factor in the proposed settlement was the likely duration of further litigation if this settlement were not consummated. Undoubtedly, the litigation would have been expensive and protracted. Indeed, Plaintiff Ohanessian and his counsel have already been litigating since 2015. Appeals would likely follow, making a final determination in this case possibly years away.

### (e)    The Stage of the Proceedings and the Amount of Discovery Completed

The parties have engaged in informal discovery, wherein Defendant produced voluminous records. Plaintiffs' counsel met and conferred with named Plaintiffs on multiple occasions. Plaintiffs' counsels' investigation included the review of records maintained by Representative Plaintiffs and documents produced by

Defendant.

By the time the Settlement Agreement was reached, Plaintiffs' counsel was fully aware of the strengths and weaknesses of the case.  Plaintiffs believe they have meritorious claims, but also understood that there was a risk of not prevailing.  The settlement in this case was reached only after counsel for Plaintiffs have reviewed the applicable law and obtained sufficient information through informal discovery and discussions to have a clear view of the strengths and weaknesses of the case and to evaluate the adequacy of the settlement.[7]

### (f)      The Recommendations of Competent Counsel

The proposed settlement is the product of lengthy, well-informed and non-collusive negotiations.  This settlement is the result of arms-length negotiations between the parties over the course of seven years and numerous telephone conferences and face-to-face meetings.  Defendant has continued to deny any legal liability arising out of the conduct alleged in this action.  Nonetheless, Defendant has concluded that it is desirable that this action be settled in the manner and upon the terms and conditions set forth in the Settlement Agreement in order to avoid the expense, inconvenience, and burden of further legal proceedings, and the

---

[7] *In re Warner Commc'ns Sec. Litig.,* 618 F. Supp. 735, 741 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986); *see also Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

uncertainties of appeals.

The Representative Plaintiffs and their counsel recognize the expense in this action against Defendant through possible appeals, which could take several more years. Representative Plaintiffs and their counsel believe that the settlement set forth in the Settlement Agreement confers substantial immediate benefits upon the Settlement Class. In negotiating the settlement, counsel had the benefit of informal discovery in this action in order to weigh the risk of litigation against the benefits and certainty that the settlement provides. Plaintiffs' counsel only entertained settlement possibilities after they possessed sufficient information regarding the size of the Settlement Class to make an informed judgment regarding the results that could be obtained through further litigation. Based upon their evaluation, Representative Plaintiffs and their counsel have determined that the settlement is in the best interest of the Settlement Class.

The proposed settlement has no "obvious deficiencies" and falls well within the range for approval. The entire Settlement Class will receive the same opportunity to participate in receiving money from the Settlement Fund. Clearly, the goal of this litigation, to seek monetary redress for the Settlement Class, has been met. The settlement does not improperly grant preferential treatment to Representative Plaintiffs or segments of the Settlement Class. The relief provided in the settlement will benefit all similarly situated Settlement Class members equally.

Any Settlement Class member who wishes to participate in the distribution of the Settlement Fund must comply and not exclude themselves from the Settlement Class. The Settlement Class is not required to submit any documentation to support the claims. Their claims will be verified through Defendant's records.

At the Final Approval Hearing, Representative Plaintiffs and Defendant will present a final judgment giving effect to the Settlement Agreement and dismissing without prejudice all claims of any Settlement Class members who have been excluded by the Settlement Class as set forth above. A proposed final judgment is attached as Exhibit C. Upon confirmation of the settlement at the Final Approval Hearing, and performance by Defendant of all its obligations under the Settlement Agreement, Defendant will be fully, finally, and completely released of all liability to the Settlement Class members not requesting exclusion, except for those liabilities created by the Settlement Agreement.

## **RELIEF REQUESTED**

The parties jointly request that the Court preliminarily approve the settlement and enter the proposed Preliminary Approval Order.

Dated: July 26, 2022

LAW OFFICES OF AARON D.
COX, PLLC

By: /s/ Aaron D. Cox
AARON D. COX (P69346)
23380 Goddard Rd.
Taylor, Michigan 48180
(734) 287-3664
aaron@aaroncoxlaw.com

SHEA LAW, PLLC

By: /s/ David J. Shea
DAVID J. SHEA (P41399)
ASHLEY D. SHEA (P82471)
26100 American Dr., Ste. 200
Southfield, Michigan 48034
(248) 354-0224
david.shea@sadplaw.com
ashley.shea@sadplaw.com

MARK K. WASVARY, P.C.

By: /s/ Mark K. Wasvary
MARK K. WASVARY (P51575)
2401 W. Big Beaver Rd., Ste. 100
Troy, Michigan 48084
(248) 649-5667
markwasvary@hotmail.com

/s/ Philip L. Ellison
PHILIP L. ELLISON  (P74117)
PO Box 107
Hemlock, Michigan 48626
(989) 642-0055
pellison@olcplc.com

/s/ Matthew E. Gronda
MATTHEW E. GRONDA (P73693)
PO Box 70
St. Charles, Michigan 48655
(989) 249-0350
matt@matthewgronda.com

*ATTORNEYS FOR BRUCE TAYLOR*


GIARMARCO, MULLINS &
HORTON, P.C.

By: /s/ William H. Horton
WILLIAM H. HORTON (P31567)
101 West Big Beaver Road, 10th Flr.
Troy, Michigan 48084-5280
(248) 457-7000
bhorton@gmhlaw.com

*ATTORNEY FOR OAKLAND
COUNTY*


## CERTIFICATE OF SERVICE

On July 26, 2022, I certify that I electronically filed this document with the Clerk of the Court through the ECF System, which will send notice of such electronic filing to all counsel of record registered electronically, and will serve via First Class U.S. mail to the following:

/s/ William H. Horton
WILLIAM H. HORTON (P31567)
Attorney for Oakland County
bhorton@gmhlaw.com

23